CASE NO.: 23-1462

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**


DOUGLAS MILCZAK v. GENERARL MOTORS LLC

On Appeal from the U.S. District Court for the Eastern District of Michigan
Southern Division's April 27, 2023 Judgment in Case No.: 21-cv-11484


**BRIEF OF PLAINTIFF-APPELLANT DOUGLAS MILCZAK**

Eric I. Frankie (P47232)
Attorney for Plaintiff-Appellant
3000 Town Center, Suite 1820
Southfield, MI 48975
(248) 219-9205
ericfrankie26@yahoo.com

# I. STATEMENT OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 26.1, Appellant Douglas Milczak makes the following disclosures:

1. Are said parties a subsidiary or affiliate of a publicly owned corporation?

No.

If the answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

None.

2. Is there a publicly-owned corporation not a party to the appeal that has a financial interest in the outcome?

No.

Date: August 23, 2023                              */s/Eric I. Frankie (P47232)*

## II.  TABLE OF CONTENTS

**I.  CORPORATE DISCLOSURE**……………………………………….p. 2

**II.  TABLE OF CONTENTS**……………………………………….p. 3

**III. TABLE OF AUTHORITIES**……………………………………..p. 4

**IV. STATEMENT IN SUPPORT OF ORAL ARGUMENT**……………..p. 6

**V.  STATEMENT OF JURISDICTION**…………………………………p. 7

**VI. STATEMENT OF ISSUES**………………………………………p. 8

**VII. STATEMENT OF THE CASE**…………………………………..p. 9

**VIII. SUMMARY OF THE ARGUMENT**…………………………..p. 21

**IX. ARGUMENT**……………………………………………...……..p. 22

**X. CONCLUSION**…………………………………………….p. 50

**XI. CERTIFICATE OF COMPLIANCE**………………………………p. 50

**XII. CERTIFICATE OF SERVICE**…………………………………p. 51

**XIII. ADDENDUM**………………………………………………p. 51

# III. <u>TABLE OF AUTHORITIES</u>

**STATUTES:**

**28 U.S.C. §1291**………………………………………………………p. 7

**28 U.S.C. §1331**………………………………………………………p. 7

**29 U.S.C. §623**………………………………………………………p. 7

**29 U.S.C. §623(a)**……………………………………………………p. 36

**FEDRAL RUES OF CIVIL PROCEDURE:**

**F.R.Civ.P. 56**………………………………………………………p. 22

**F.R.Civ.P. 56(c)(1)(A)**………………………………………………p. 23

**F.R.Civ.P. 56(c)(4)**…………………………………………………p. 8, 22

**FEDERAL RULES OF APPELLATE PROCEDURE:**

**F.R.A.P. 3**……………………………………………………………p. 7

**F.R.A.P. 4**……………………………………………………………p. 7

**F.R.A.P. 32(a)(7)**……………………………………………………p. 50

**F.R.A.P. 32(f)**………………………………………………………p. 50

**LOCAL RULES:**

**6th Cir. R. 26.1**……………………………………………………p. 2

**U.S. SUPREME COURT CASES:**

*Harris v. Forklift Sys Inc., 510 U.S. 17 (1993)*……………………………p. 31

**SIXTH CIRCUIT CASES:**

*Deleon v. Kalamazoo County Road Comm'n, 739 F.3d 914 (6th Cir.2014).*p. 40

*Fox v. Eagle Distrib Co., 510 F.3d 587 (6th Cir. 2007)*………………….p. 47

*Jackson v. VHS Detroit Receiving Hosp Inc., 814 F.3d 769 (6th Cir. 2016)*..p. 42

*Randolph v. Ohio Dept of Youth Services, 453 F.3d 724 (6th Cir. 2006)..*p. 24, 26

*Threat v. City of Cleveland Ohio, 6 F.4th 672 (6th Cir. 2021)*……………p. 36, 40

*Williams v. General Motors Corp, 187 F.3d 553 (6th Cir. 1999)*…p. 22, 24, 27, 31, 35, 36, 43

*Yazdian v. ConMed Endoscopic Technologies, Inc., 793 F.3d 634 (6th Cir. 2015)*……………………………………………………….p. 44, 47, 48, 50

**DISTRICT COURT CASES:**

*Mav Michigan Inc. v. American County Ins Co., 289 F.Supp 2d 873 (E.D. Mich 2003)*…………………………………………………………….p. 43

## IV. STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiff-Appellant Douglas Milczak is requesting oral argument in this matter. The issues raised by this appeal are important to all civil rights claims.

# V.  STATEMENT OF JURISDICTION

1. The basis for the U.S. District Court's original jurisdiction is 29 U.S.C. §623 and 28 U.S.C. §1331 because Plaintiff-Appellant Douglas Milczak brought this action under the Age Discrimination in Employment Act.

2. The basis for the U.S. Circuit Court of Appeals for the Sixth Circuit's jurisdiction is 28 U.S.C. §1291 because Plaintiff-Appellant Douglas Milczak filed his Notice of Appeal on May 23, 2023 from a final order of the U.S. District Court for the Eastern District, Southern Division, dated April 27, 2023, granting Defendant-Appellee General Motors LLC's Motion for Summary Judgment.

3. Plaintiff-Appellant Douglas Milczak's Notice of Appeal from the U.S. District Court for the Eastern District of Michigan's Opinion and Order Granting Defendant-Appellee's Motion for Summary Judgment (RE 26) is timely pursuant to F.R.A.P. 3 & 4.

4. Plaintiff-Appellant Douglas Milczak's Notice of Appeal is from a final order and judgment of the U.S. District Court for the Eastern District of Michigan, Southern Division, dated April 27, 2023.

# VI. <u>STATEMENT OF ISSUES</u>

**A. Should this Court consider Plaintiff-Appellant's 3/3/23 Declaration which complies with F.R.Civ.P. 56(c)(4) and his timeline summary which was made part of his 3/21/22 Deposition as Exhibit A?**

**B. Did Plaintiff-Appellant exhaust his administrative remedies concerning his ADEA hostile work environment claim where the MDCR could reasonably be expected to investigate that claim based on his 12/11/29 Charge of Discrimination?**

**C. Has Plaintiff-Appellant submitted sufficient material issues of fact in support of his ADEA hostile work environment claim under the totality of the circumstances analysis?**

**D. Has Plaintiff-Appellant presented sufficient questions of fact in support of his ADEA discrimination claim where he suffered adverse employment actions and younger employees were treated better than him?**

**E. Has Plaintiff presented sufficient material issues of fact in support of his ADEA retaliation claim where he engaged in legally sufficient protected activities which caused Defendant-Appellee's adverse employment actions?**

# VII. <u>STATEMENT OF THE CASE</u>

Plaintiff-Appellant Douglas Milczak ("Plaintiff"), 59 yrs old, has been employed by Defendant-Appellee General Motors LLC ("Defendant" or "GM") since August, 1994 as a senior manufacturing engineer. (3/21/22 Deposition of Plaintiff, RE 40-2, ID#569, 573)[1]  James Donlin ("Donlin") DHAM Plaintiff Engineering Director stated Plaintiff "was probably at the time the best we had there…at the plant for sure." (10/13/22 Deposition of James Donlin, RE 26-12, ID#338)[2]  At DHAM, Plaintiff's supervisor Michael Lazaroff ("Lazaroff")'s harassment of Plaintiff started with name calling as early as August, 2016. (RE 40-2, ID#575-578)[3] Lazaroff would call Plaintiff "my bitch," "motherfucker," and other things like that. (Id., ID#577)  Lazaroff called Plaintiff "my bitch" and "motherfucker" 20 times each from August/September 2016 through December, 2018. (Id., ID#577)  Plaintiff objected to Lazaroff's vulgarities more than once but to no avail. (Id., ID#578)[4]

---

[1] All further references in parentheses to RE 40-2, 40-3 and 40-6 are to Plaintiff's 3/21/22 Deposition Transcript and Exhibit A thereto.
[2] Ronnie Perez, Plaintiff's co-worker, testified that Plaintiff was a "good conscientious employee." (10/13/22 Deposition of Ronnie Perez, RE 26-4, ID#219)
[3] Even Lazaroff acknowledged the high quality of Plaintiff's work. Lazaroff testified that he would stand by all of the good reviews he gave Plaintiff. (10/7/22 Deposition of Michael Lazaroff, RE 26-3, ID#209)  Also, if Plaintiff came to him for a recommendation, Lazaroff would give him one. (Id., ID#210)
[4] Perez testified that Lazaroff used vulgarities with him. (Perez Deposition, RE 26-4, ID#220) Donlin testified that it would not be appropriate to use the kind of

In December, 2018, around the time Plaintiff heard that DHAM was closing, Lazaroff called Plaintiff "old fart."[5] (RE 40-2, ID#570-571, 575-577) Then Lazaroff called Plaintiff "old fucker" in January, 2019. (RE 40-2, ID#579-580) When Plaintiff asked what Lazaroff meant by "be quick" in an email Lazaroff told him "don't waste any time" and "they might not want an old fucker like you" at the Toledo Plant. (Id.)[6]

In January, 2019, Lazaroff reassigned Plaintiff to General Assembly Maintenance which was a very stressful job. (RE 40-2, ID# 571, 573, 577) Shortly after taking the maintenance position, Plaintiff started to receive harassment from a portion of the 1st & 2nd shift Skilled Trades, which Plaintiff had not been properly trained to handle. (RE# 40-3, ID#650-652; Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID# 688) Plaintiff repeatedly requested Lazaroff and Donlin (Lazaroff's boss)'s support to resolve the Skilled Trades' bad behavior but to no avail. (Id.)

---

terminology that Lazaroff did towards Plaintiff in the workplace. (Donlin Deposition, RE#26-12, ID#341) Donlin stated "GM, we release people because of that stuff;" in other words, it is not accepted. (Id.)

[5] Lazaroff had asked Plaintiff if he was going to take a voluntary layoff in late 2018 or early 2019 but Plaintiff told him he couldn't. (RE 40-2, ID#589) In late 2018, Defendant offered a voluntary severance program ("VSP") to its salaried employees, including Plaintiff, that had accumulated 12 or more years of service. (VSP, RE 40-4)

[6] In March 2018, Jason Rousell ("Rousell") DHAM Engineering Director, asked Plaintiff to write a summary of everything he had done for DHAM in support of his request for better compensation which was shocking since Rousell had been there with him. (RE# 40-2, ID# 581) In Lazaroff's office, Rousell told Plaintiff he was making too much money as it was and agreed with Lazaroff in their statement of "knowledge does not matter." (Id., ID# 582)

Donlin and Lazaroff simply told Plaintiff on a number of occasions that "trades are a bitch to work with." (RE 40-2, ID#592)

On March 8, 2019, Lazaroff called Plaintiff into Donlin's office, started yelling at Plaintiff "motherfucker I'm sick of your shit" and threatened Plaintiff that he could remove Plaintiff from the plant anytime he wanted. (RE 40-3, ID#650-652; Ptf Sum, Ex A to 3/21/22 Deposition, RE 40-6, 686) Plaintiff objected to Lazaroff calling him degrading names especially in front of UAW workers since this would affect his respect and authority. (Id.)

On May 21, 2019, Lazaroff had a meeting, at Plaintiff's request, with a few of the Skilled Trades and their UAW Committeeman Scott Harwick. (RE 40-3, ID#650-652, Ptf's Sum, Ex A to 3/21/22 Deposition, RE 40-6, ID# 688) Plaintiff was shocked during this meeting that Lazaroff and Hartwick only wanted to discuss "getting more bang for the buck" on 2nd shift while there was no mention of the resistance and harassment Plaintiff was receiving from Trades. (Id.) When Plaintiff brought up the issue, Lazaroff did not support Plaintiff and agreed with Harwick that Plaintiff needed to give the Trades a written work list each day, even though they knew exactly what to do. (Id.)[7]

---

[7] It took Defendant over five (5) months until May 30, 2019, to provide Plaintiff with the tools he needed to help manage Trades with discipline actions. (RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#689)

On May 22, 2019, Plaintiff found a picture of an old, dead mouse, with the name "Doug," caught in a trap being assaulted by other mice named for the Trades, such as Pipefitter, Millwright, ToolMaker and Electrician. (Moustrap picture, RE 26-5, ID#226; RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#688)[8] The picture also had the statement "When you're down and out everyone wants to screw you." (Id.) Plaintiff averred to the Michigan Department of Civil Rights ("MDCR") in his December 11, 2019 Charge of Discrimination that "in May, 2019, I reported that there was a drawing posted at my worksite showing me lying dead in a trap. I immediately reported the incident to the respondent's managers and **explained that I felt the drawing was made because of my age and as recently as June 2019 the respondent's manager called me old and directed profanities at me."** (MDCR Charge, RE 26-15, ID#351; emphasis supplied) Plaintiff also explained at his deposition that the "mousetrap picture" was related to his age: **"**I used to hunt. I used to take my dogs to the dog park. **I know the older dogs always got pushed, pushed on and pressured like at a dog park.** That's how I viewed it.**"** (RE 40-3, ID# 648-649; emphasis supplied)

---

[8] Plaintiff found the mousetrap picture in the GA break area while he was looking for a sheet of paper to write the Trades 2nd shift work assignments. (RE 40-3, ID#650-620, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#690)

Donlin told Plaintiff during their meeting on 5/30/19 that the "mousetrap picture" was absolutely harassment and unacceptable. (RE 40-3, ID# 650-652, Ptf Sum, Ex A to 3/21/22 Deposition, RE 40-6, ID# 690) Plaintiff learned that Defendant's HR had interviewed Trades about the picture but referred to it as a "cartoon." (RE 40-2, ID#595-596) Defendant's HR wouldn't tell Plaintiff either about the process of the investigation even though the reps told him that they had never experienced seeing a picture like it in the plant. (RE 40-2, ID#597-598) Defendant's investigation did not identify any suspects and only recommended 30 minute ant-harassment training for the 1st and 2nd shift Trades. (Defendant 6/19/19 Investigation Summary, RE 26-9, ID#314-328)[9] In fact, during a weekly Trades meeting on June 12, 2019, Plaintiff was approached by the entire 1st shift Trades team since they were all upset at him because of Defendant's HR interviews. (RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#692) Defendant's investigation even suggested that Plaintiff was somehow responsible for the threat due to the HR reps' recommendations for his "competency and behavioral development" which they shared with his leadership. (Defendant 6/19/29 Investigation Summary, RE 26-9, ID#315) Sean Tackett ("Tackett") even expressed hostility towards Plaintiff's request for a timely, thorough investigation

_____

[9] Plaintiff asked a number of times without receiving an answer why the harassment training for Trades was so short when salaried employees received over two days. (RE 40-2, ID#598)

into the threat "I do not appreciate your criticism of the effort and process…"

(Tackett 6/7/19 Email to Plaintiff, RE 26-9, ID#324)[10]

Donlin noted that Plaintiff became "stressed out a lot" because of the "nasty picture." (Donlin Deposition, RE 26-12, ID# 339) Donlin testified that "we were giving him some time to kind of clear his mind on that stuff." (Id.) Donlin claimed that they worked it out that Plaintiff could take some time off if needed. (Id., ID# 341) Yet, Donlin stated that "then it got to the point where it was excessive. (Id.) According to Donlin, this was a negative aspect of Plaintiff's employment. (Id.) Donlin testified that "without that picture…I think he would be great." (Id., ID#342)[11] Donlin emphasized that Plaintiff had to be "course corrected" because he needed time off due to the stress caused by the "mousetrap picture." (Id., ID#341)

Towards the end of June, 2019, Lazaroff called Plaintiff "old fucker" again. (RE 40-2, ID#582-583) Plaintiff walked Lazaroff out to the skillet repair area to show him his suggestion but Lazaroff got upset with Plaintiff and said "just drop it,

---

[10] Even though Plaintiff asked Defendant's HR to not close the investigation into the "mousetrap picture" they told him it was "conclusive" and the matter would be closed. (RE 40-3,ID#645-646) Further, Defendant refused to do a handwriting analysis and did not offer a reward for information as Defendant had done with its Toledo plant in a similar harassment situation based on the untrue assertion that the mousetrap picture did not pose a threat to Plaintiff. (RE 40-2, ID#597-598, RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#692-693)

[11] Donlin admitted that he would work with Plaintiff again. (Donlin Deposition, RE 26-12, ID#342)

you old motherfucker. You'll never get paid for this." (Id.)  On July 10, 2019, about one hour after Plaintiff sent an email to Donlin requesting his support to have Defendant's HR finish the investigation into the "mousetrap picture," Lazaroff notified Plaintiff that he was not required in GA Maintenance anymore because he could handle the area all by himself and that Plaintiff would be reassigned in a few weeks to Omega/CT6 Body Shop Maintenance. (RE 40-3, ID#650-652, Ptf Sum, Ex A to 3/21/22 Deposition, RE 40-6, ID#693)[12] On July 16, 2019, Plaintiff complained to Donlin about Lazaroff's misconduct, including calling him "old fucker," "my bitch," and "motherfucker." (Id., ID#687; RE 40-2, ID#599-600)  Donlin told Plaintiff he would discuss these incidents with Lazaroff. (Id.)  Plaintiff checked back with Donlin a few days later and Donlin simply said that he talked to Lazaroff but that Lazaroff said he never did that. (RE 40-2, ID#600)

On August 7, 2019, Plaintiff's new Body Shop supervisor, Damon Ferraiuolo ("Ferraiuolo"), notified Plaintiff that he was going to the 2nd shift. (RE

---

[12] On July 15, 2019, Plaintiff discovered that a new, younger employee, Siarhei Tsahelnik, was taking his place thereby indicating Lazaroff simply wanted Plaintiff gone from GA Maintenance. (Id., ID#694)  Plaintiff learned that Tsahelink had very little applicable technical knowledge and experience. ( RE 40-2, ID#570; RE 40-3, ID#650-652, Plaintiff's Summary, Exhibit A to 3/21/22 Deposition, RE 40-6, ID#694)

40-2, ID#584-585)[13]  Plaintiff shared with Ferraiuolo that he couldn't do that because he wanted to be able to see his wife. (Id.)  Also, Plaintiff experienced stressful isolation as if he was "sitting in prison." (RE 40-2, ID#587)  Plaintiff discussed with Ferraiuolo Defendant's policy desire to hire young people in while other employees were pushed aside. (Id.)  Plaintiff told Ferraiuolo "don't get involved in this, because this is pure harassment." (Id.)  Ferraiuolo agreed with Plaintiff that Defendant was promoting and hiring young people while old people were kind of getting pushed out the door. (Id.)  As a result of change to 2nd shift, Plaintiff hardly got any overtime. (RE 40-3, ID#611)

On August 8, 2019, Donlin, Tackett and Body Shop Area Manager Jason McKelvey called Plaintiff into a meeting and gave him a memo about his attendance. (RE 40-2, ID#599)  The memo contained threatening statements that Plaintiff may be terminated and/or have an impact to his compensation if he called in to miss work. (Attendance memo, RE 40-9, ID#727-728)   Plaintiff was missing work because of uncontrollable stress headaches caused by the harassment he was experiencing. (RE 40-3, ID#610)  The August 8, 2019 attendance memo was not even within GM salaried employees' policy since there is no written policy for

_____

[13] Plaintiff's supervisors ignored Plaintiff's email with a doctor's note stating that he was being treated for depression. (RE 40-2, ID# 586) The 2nd shift screwed up Plaintiff's marriage which was hard for him to deal with. (Id.)

attendance. (Id.)[14]  Also, during this meeting, Donlin mentioned that he did not

investigate the Lazaroff issues any further. (RE 40-2, ID#599)  RE 40-3, ID#650-

652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#687)  While Tackett stated

he would consider looking into the issue, it is undisputed that he never gave

Plaintiff any further feedback. (Id.) Plaintiff started seeing a psychologist in

October, 2019. (RE 40-5, ID#666)

On December 11, 2019, Plaintiff filed his complaint of age discrimination

with the MDCR. (MDCR Charge, RE 26-15, ID#351)  In late January, 2020,

Plaintiff procured and accepted a GM central office position in the conveyor tool

install group with the understanding that he would be assigned to the DHAM New

Product Program. (RE 40-3, ID#650-652, Ptf Sum, Ex A to 3/21/22 Deposition,

RE 40-6, ID#701)  In February, 2020, Plaintiff began his work as a senior

manufacturing engineer at Defendant's Central Office which is still his position.

(RE 40-2, ID#572-573) Brent Cuthbert ("Cuthbert") has been Plaintiff's supervisor

at central office since February 15, 2020. (Id.)  Also, in February, 2020, Guy

Mitchell ("Mitchell"), Plaintiff's direct DHAM site supervisor, made it clear to

Plaintiff that age discrimination would continue in his new work location. (RE 40-

---

[14] In December, 2019, then GM DHAM HR rep Tonika Fatheree told Plaintiff that there is no written Salary attendance policy like there was for hourly employees. (RE 40-3, ID#650-652, Plaintiff's Summary Exhibit A to 3/21/22 Deposition, RE 40-6, ID#695)  Moreover, Plaintiff had never during these 25 years received any management memos/threats for conduct or missing work. (Id.)

3, ID#624-625)  Plaintiff told Mitchell that he hadn't been doing well because of the harassment and other things going on at DHAM. (Id.)  Mitchell responded "Yeah, I know what you mean, you know.  They're getting rid of older guys, and I ran across some of that in my last Arlington job." (Id.)  It was in early, 2020, that GM received notice of Plaintiff's filing with the MDCR. (Id., ID#625)

On August 18, 2020, Plaintiff found a picture of an old man with long hair and his eyes poked out on his desk in a cubicle where he was working right up front in the plant. (RE 40-3, ID# 638-642; Old man picture, RE 40-10, ID#730) Then on August 31, 2020, Plaintiff found a Michael Jackson CD in the cubicle where he worked. (Id., ID#641-642) Plaintiff was offended by the CD because the Jackson CD was a reference to Plaintiff's age since Jackson was big in the early 80s. (Id.)

On February 16, 2021, Cuthbert gave Plaintiff the first bad performance review he had ever received in 25 years for the 2020 year which contained numerous false, perhaps even slanderous, comments. (RE 40-3, ID#622-624; RE 40-3, ID#650-652, Ptf's Sum, Ex A to 3/21/22 Deposition, RE 40-6, ID#711)  The 2020 review was made more disturbing because Plaintiff had received many Team Recognitions for his contributions and had recently received, on 2/12/21, an email praise from Cuthbert. (Id., Cuthbert 2/12/21 email to Plaintiff, RE 40-11, ID#735) In March, 2021, because of all the discrimination he had endured, Plaintiff started

seeing a psychiatrist who prescribed medications intended to reduces his stress, anxiety and depression. (RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#712)

On June 24, 2021, Plaintiff filed the instant lawsuit against GM. (Plaintiff's 6/24/21 Complaint, RE 1, ID#1-14) On September 29, 2021, Mitchell told Plaintiff that he needed to do more on the DHAM project and that people were saying that they did not see Plaintiff on site. (RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#716) Mitchell then told Plaintiff that most site people laugh when he asks the group if anyone in the office has seen Plaintiff. (Id.) It was untrue that Plaintiff had not been at the site. (RE 40-3, ID#626-627) Further, Mitchell lied to Plaintiff about his job ending at the end of 2021. (Id., ID#627) In December, 2021, Cuthbert falsely accused Plaintiff of not doing his job. (Id.) Cuthbert and Mitchell started having Plaintiff provide updates or daily tracking of his job duties. (Id.) Plaintiff advised Cuthbert that he had never heard of any Defendant Engineer/Salary employee having to do a daily report. (RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#717) When Plaintiff asked Cuthbert if this was part of Defendant's Salary Policy, Cuthbert did not respond. (Id.) On January 19, 2022, Plaintiff had to go on a leave of absence for severe depression and anxiety. (RE 40-2, ID#574) Plaintiff's leave had been continuous as of the date of his March 21, 2022 deposition. (Id., ID#575)

On November 30, 2022, Defendant filed its Motion for Summary Judgment. (Defendant's Motion for Summary Judgment, RE 26)  On March 3, 2023, Plaintiff filed his Response. (Plaintiff's Response to Defendant's Motion for Summary Judgment, RE 40)  On April 27, 2023, the lower court issued it Opinion and Order Granting Defendant's Motion for Summary Judgment without oral argument. (Lower court Opinion and Order Granting Defendant's Motion for Summary Judgment (ECF NO. 26), RE 42)  On May 23, 2023, Plaintiff filed his timely Notice of Appeal. (Notice of Appeal, RE 45) As a result this Brief ensues.

# VIII. <u>SUMMARY OF THE ARGUMENT</u>

The lower court committed reversible legal error for five (5) main reasons. First, the lower court should have considered Plaintiff's 3/3/23 Declaration and his summary timeline which was made a part of his 3/21/22 Deposition as Exhibit A. Second, Plaintiff exhausted his administrative remedies at the MDCR concerning his ADEA hostile work environment claim. Third, Plaintiff has presented sufficient issues of fact in support of his ADEA hostile work environment claim under the totality of the circumstances analysis. Fourth, Plaintiff has presented sufficient material evidence in support of his ADEA discrimination claim since he suffered adverse employment actions and younger employees were treated better than him. Fifth, Plaintiff has presented sufficient questions of fact concerning his ADEA retaliation claim because he engaged in protected activities which caused Defendant's adverse employment actions.

# IX. ARGUMENT

The lower court committed reversible error by granting Defendant's Motion for Summary Judgment for five (5) main reasons. First, this Court should consider Plaintiff's 3/3/23 Declaration and Summary which was attached as Exhibit A to his 3/21/22 Deposition. Second, Plaintiff exhausted his administrative remedies concerning his ADEA hostile work environment claim. Plaintiff has presented sufficient material issues of fact in support of his ADEA hostile work environment claim. Third, Plaintiff has presented questions of fact in support of his ADEA discrimination claim. Fourth, Plaintiff has presented sufficient material issues of fact in support of his ADEA retaliation claim. Fifth, this Court reviews *de novo* the district court's grant of summary judgment under F.R.Civ.P. 56 as to each of these issues. ***Williams v. General Motors Corp, 187 F.3d (1999).***

## A. This Court should consider Plaintiff's 3/3/23 Declaration and Summary which was attached as Exhibit A to his 3/21/22 Deposition.

This Court should consider Plaintiff's 3/3/23 Declaration (Plaintiff's 3/3/23 Declaration, RE 40-5) and his Summary which was attached as Exhibit A to Plaintiff's 3/21/22 deposition (RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6). This Court reviews the lower court's decision on this issue *de novo.* ***Williams.*** F.R.Civ.P. 56 (c)(4) provides that "an affidavit or declaration used to support or oppose a motion (for summary judgment) must be made on personal knowledge, set out facts that would be admissible in evidence, and show

that the affiant or declarant is competent to testify on the matters stated." Here,

Plaintiff's March 3, 2023 signed Declaration (Plaintiff's 3/3/23 Declaration, RE

40-5) meets all of these requirements. Likewise, Plaintiff's Summary, which was

attached and admitted as Exhibit A to Plaintiff's 3/21/22 Deposition (RE 40-3,

ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6) should be considered

by this Court. F.R.Civ.P. 56 (c)(1)(A) provides that a party asserting that a fact is

genuinely disputed must support the assertion by citing to particular parts of

materials in the record including depositions. Here, Plaintiff's Summary is part of

his 3/21/22 Deposition and is part of the record to be considered by this Court. At

Plaintiff's 3/21/22 Deposition, Plaintiff's counsel introduced as Exhibit A

Plaintiff's timeline. (RE 40-3, ID#650) Plaintiff explained that his timeline was a

40 page long summary of events dated February 13, 2022. (Id., ID#651) Plaintiff's

counsel asked Plaintiff specifically concerning his summary whether it was true

and accurate to the best of his knowledge and belief. (Id., ID#652) Plaintiff, who

was under oath at the time, answered "yes" to this question. (Id.) Moreover,

Defendant had a copy of Plaintiff's summary at his deposition and was able to ask

Plaintiff any questions about it deemed necessary. The lower court incorrectly

concluded that Plaintiff's Timeline Summary of Events was not sworn under oath,

was not notarized, did not contain any statement as to its veracity of the

information contained therein and not made under penalty of perjury (Lower court

Opinion and Order, RE 42, ID#757) because it is undisputed that the summary was made part of Plaintiff's 3/21/22 Deposition as Exhibit A.

**B. Plaintiff exhausted his administrative remedies concerning his ADEA hostile work environment claim.**

Plaintiff has exhausted his administrative remedies concerning his ADEA hostile work environment claim. This Court reviews the lower court's decision on this issue *de novo.* ***Williams, supra.*** A Charge of Discrimination should be liberally construed to encompass all claims reasonably expected to grow out of the Charge. ***Randolph v. Ohio Dept. of Youth Services, 453 F.3d 724 (2006).*** Here, Plaintiff sufficiently alleged facts in his Charge of Discrimination with the Michigan Department of Civil Rights ("MDCR") to put the agency on notice to investigate his claim of an age hostile work environment.

Plaintiff's MDCR Charge (MDCR Charge, RE 26-15), given a liberal construction, encompasses his hostile work environment claim because that claim should reasonably be expected to grow out of Plaintiff's actual Charge allegations. Plaintiff averred that the cause of discrimination was age and that the date of the most recent **or continuing discrimination** was November 18, 2019. Plaintiff stated: "I am 56 years of age and engaged in a protected activity and alleged I was disciplined on August 8, 2019 **and subject to harassment as recently as November 18, 2019 due to my age…**" Plaintiff also wrote in his Charge **"Harassment/Not Sexual"** based on **"Age, Retaliation."** He then described the

occurrences from May, 2019 through November 18, 2019 that supported his claim of an age hostile work environment, which included: (1) the mousetrap drawing which he reported that he felt was made because of his age, (2) his manager calling him "old" and directing profanities at him as recently as June, 2019, (3) his transfer on July 15, 2019 to another department after which his previous position was filled by a younger employee, (4) the August 8, 2019 discipline for an alleged attendance policy violation, (5) his August 26, 2019 transfer to the 2nd shift resulting in loss of overtime opportunities as recently as November 18, 2019 and stressful isolation, (6) on November 18, 2109, Defendant's managers informing him that even though he qualified for a bonus it would not be given to him, and (7) Plaintiff's complaint to Defendant's managers multiple times beginning in May, 2019, that the conduct and transfers were based on his age but without adequate response. These specific MDCR Charge allegations should have put the agency on notice to investigate Plaintiff's hostile work environment claim since they should reasonably be expected to grow out of his Charge allegations especially given a liberal construction.

It was simply wrong for the lower court to state that Plaintiff's "charge does not allege any of the acts interfered with his work performance (Lower court, Opinion and Order, RE 42, ID#763)" when Plaintiff stated that he had been transferred, disciplined, transferred a second time and denied suggestion bonuses

because of his age. Likewise, the district court's holding that "the only allegation that is overtly related to plaintiff's age is the fact that on one occasion his manager called him old (Id.)" is just not accurate given that Plaintiff alleged in his Charge that all of the conduct he was subject to was age based harassment and legal requirement to construe Plaintiff's Charge liberally.

This Court explained in ***Randolph, supra.,*** that hostile work environment claims by their very nature require ongoing conduct which often involve an escalating progression of harassment. Like the lower court's finding in ***Randolph,*** which was reversed, the lower court's holding here that only one of Plaintiff's Charge allegations overtly relates to his age is essentially evidentiary in nature. This Court in its decision identified two significant legal concerns with a lower court's evidentiary finding concerning a plaintiff's charge allegations. First, as discussed above, the MDCR (and EEOC) could reasonably be expected to investigate a hostile work environment based on all of Plaintiff's Charge allegations and such a claim is not beyond the scope of his Charge especially since the EEOC (and, presumably the MDCR), due to its broad investigatory powers, has access to virtually any material which might cast light on the allegations against Defendant. Second, and more importantly, the lower court should take into account the ongoing nature of hostile work environment claims when reviewing a plaintiff's charge since such an analysis undergirds the required "totality of the

circumstances" test.  It is noteworthy, also, that Plaintiff's MDCR Charge form, as opposed to the EECO standard charge, does not have a discrete, separate box to check for "hostile work environment" as opposed to "discrimination."  For all of these reasons, it was reversible error for the lower court to hold that Plaintiff had not exhausted his administrative remedies since it was reasonable to expect the agency to investigate his age hostile work environment claim based on his actual Charge statements.

**C. Plaintiff has presented sufficient material issues of fact in support of his ADEA hostile work environment claim.**

Plaintiff has presented sufficient material issues of fact in support of his ADEA hostile work environment claim.  This Court reviews the lower court's decision on this issue *de novo*. ***Williams v. General Motors Corp. 187 F.3d 553 (1999).***  In determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment, it is well-established that this Court consider the totality of the circumstances. ***Id.*** The totality of the circumstances test must be construed to mean that even where individual instances of harassment do not on their own create a hostile environment, the accumulated effects of such incidents may result in a Title VII (or ADEA) violation.  Lastly, there is not requirement under the subject component of the plaintiff's hostile work environment claim that he report a hostile work environment. ***Id.***

Applying the totality of the circumstances test to the instant case, Plaintiff

has presented sufficiently material evidence to create a question of fact in support

of his age hostile work environment claim.  Plaintiff has presented evidence of the

following age hostile conduct:

1. From August, 2016, until December 2018, Lazaroff called Plaintiff vulgar names such as "my bitch," and "motherfucker."  Lazaroff called Plaintiff "my bitch" and "motherfucker" 20 times each during that time period (RE 40-2, ID# 575-578);

2.  In March/April, 2018, Rousell, after asking Plaintiff to write a summary of everything he had done for DHAM which Rousell already knew, told Plaintiff that he was making too much money as it was and commented that "knowledge does not matter."  This was a reference to age for Plaintiff because with age you get more knowledge and experience; (RE 40-2, ID#581-582);

3.  In December, 2018, shortly after GM DHAM shutdown announcement, Lazaroff called Plaintiff "old fart" after a GA morning meeting (RE 40-2, ID#570-571, 575-577);

4.  In January, 2019, Lazaroff  told Plaintiff "don't waste any time" and "they might not want an old fucker like you" at the Toledo plant when Plaintiff asked Lazaroff what he meant by the sarcastic remark "be quick" in a prior email (RE 40-2, ID#579-580);

5.  In January, 2019, during his visit to the Toledo Plant, Plaintiff was met by the Assistant Plant Manager with quick, aggravated questioning of his capabilities and the statement when he stormed off that he already knew about Plaintiff by talking with Rousell (RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#697-698);

6.  In January, 2019, Lazaroff reassigned Plaintiff to GA Maintenance which was a horrible job to perform without adequate training and support to manage Trades. In fact, Donlin and Lazaroff simply told Plaintiff "trades are a bitch to work with" (RE 40-2, ID#592);

7. At a May 21, 2019 meeting, Lazaroff and Harwick refused to meaningfully discuss Trades resistance to Plaintiff's instruction, refused to support him and simply told Plaintiff to give them a written work list every day even though they knew what to do based on 30-40 years plant experience (RE 40-3, ID#650-652, Ptf Sum, Ex A to 3/21/22 Deposition, RE 40-6, ID#686);

8. On May 22, 2019, Plaintiff found a threatening picture of an old, dead mouse with his name on it caught in a trap being assaulted by other mice with Trades names such as Pipefitter, Millwright, ToolMaker and Electrician which Plaintiff believed was related to his age (Mousetrap Picture, RE 26-5, ID#226);

9. GM HR's investigation in May/June, 2019 into the "mousetrap picture" was completely inadequate, was inconclusive, blamed Plaintiff for the threatening image and caused Trades employees to be more hostile towards Plaintiff (Defendant's 6/19/19 Investigation Summary, RE 26-9, ID#314-28; RE 40-2, ID#590-598; RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#692);

10. Towards the end of June, 2019, Lazaroff said to Plaintiff "just drop it you old motherfucker, you'll never get paid for this" when Plaintiff tried to show him a cost savings idea to stop the skillet conveyor carts from tipping over (RE 40-2, ID#582-583);

11. On July 10, 2019, Lazaroff notified Plaintiff that he would be reassigned to Body Shop Maintenance based on the false assertion that he, Lazaroff, could handle the GA all by himself. Plaintiff learned that Lazaroff soon replaced him with a younger, less experienced engineer (RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#693-694);

12. On August 7, 2019, Ferraiuolo notified Plaintiff that he was going to the 2nd shift to take the place of an existing 2nd shift contract employee who was leaving, which was not true since this contract employee remained at DHAM on the 1st shift, while agreeing with Plaintiff that GM was promoting and hiring younger people and that older people were getting pushed out the door. This transfer caused Plaintiff to experience stressful isolation (RE 40-2, ID#584);

13. On August 8, 2019, Donlin, Tackett and McKelvey gave Plaintiff a memo about his attendance which contained threatening statements that Plaintiff may be terminated and/or have an impact to his compensation because Plaintiff had been

missing work due to unpredictable stress headaches caused by GM's age hostility (RE 40-2, ID#599, RE 40-9, ID#727-728, RE 40-3, ID#610);

14. In February 2020, after Plaintiff's transfer to the central office, when Plaintiff shared with Mitchell that he hadn't been doing well because of the harassment, Mitchell responded "Yeah, I know what you mean, you know. They're getting rid of older guys, and I ran across some of that in my last Arlington job" (RE 40-3, ID#624-635);

15. On August 18, 2020, Plaintiff found a picture of an old man with long hair and his eyes poked out on his desk where he was working right up front in the plant (RE 40-3, ID#638-642, RE 40-10, ID#730);

16. On August 31, 2020, Plaintiff found a Michael Jackson CD in the cubicle where he worked which Plaintiff believed to be a negative reference to his age since Jackson was big in the 80s (RE 40-3, ID#638-642);

17. On February 16, 2021, Cuthbert gave Plaintiff the first bad performance review he had received in 25 years at GM which contained falsehoods that plaintiff rebutted (RE 40-3, ID#622-624, RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#711);

18. On September 29, 2021, Mitchell told Plaintiff that he needed to do more on the DHAM project and that people were saying that they did not see him on site which was not true (RE 40-3, ID#626-627); and

19. In December, 2021, Cuthbert falsely accused Plaintiff of not doing his job and started having Plaintiff provide updates or daily tracking of his job duties even though he had never heard of any GM Engineer/Salary employee having to do a daily report (RE 40-3, ID#626-627, RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#717).

Contrary to this Court's holding that district courts must engage in a totality of the circumstances analysis in the context of a hostile work environment claim, the lower court did not engage in such an analysis. The lower court's error in this regard is apparent from its failure to even mention the totality of the circumstances

test in its opinion.  This error in analyzing Plaintiff's age hostile work environment

claim is even more pronounced since the district court refers to the lead case on

this issue, *Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993),* but does not apply the

totality of the circumstances test.  Rather, the lower court engaged in an

impermissible disaggregation of Plaintiff's evidence concerning his age hostile

work environment and interpreted that evidence in isolation, as well as incorrectly,

in a light most favorable to Defendant.

Here, in contrast to this Court's holding in *Williams, supra.,* the lower court

carved Plaintiff's work environment into a series of discrete, separate incidents

while measuring the harm adhering in each episode in isolation.  Like the district

court's analysis that was reversed in *Williams,* the lower court divided and

categorized Plaintiff's reported incidents, thereby divorcing them from their

context and depriving them of their full force.  The lower court identified the

following, separate incidents of age hostile harassment to Plaintiff: (1) age-based

harassment based on personnel actions, (2) various reassignments made due to the

shutdown status at DHAM, (3) allegations of a poor performance review and

attendance memo, (4) three Lazaroff age hostile comments, (5) the two pictures of

Plaintiff, shown as a dead mouse being assaulted while caught in a mousetrap by

other mice and the picture of an old man with long hair with his eyes poked out,

and (6) a Michael Jackson CD. (RE 42, ID# 764-765)  The district court

incorrectly held that incident nos. (1), (2), (3), (5) & (6), in isolation, did not amount to actionable discriminatory conduct under a hostile work environment theory and considered incident no. (4), Lazaroff's age-hostile comments, insufficient, standing alone, to support such a claim. (Id.)

However, when viewed within the totality of the circumstances, all of the incidents cited by the lower court demonstrate age hostility towards Plaintiff and adequately support an actionable ADEA hostile work environment claim, to wit:

1. Personnel actions: Lazaroff who referred to Plaintiff as "old fucker," "old fart," and "old motherfucker," reassigned Plaintiff to GA Maintenance in January, 2019, and notified Plaintiff of his reassignment to Body Shop Maintenance on July 10, 2019. (RE 40-2, ID# 571, 573, 588; RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#693)  Ferraiuolo notifed Plaintiff that he was going to the 2nd shift while agreeing with Plaintiff that Defendant was promoting and hiring younger people and that older people were getting pushed out the door (RE 40-2, ID#584). Furthermore, after Plaintiff transferred to the Central Office and he shared with Mitchell that he hadn't been doing well because of the harassment, Mitchell responded "Yeah, I know what you mean, you know. They're getting rid of older guys and I ran across some of that in my last Arlington job" (RE 40-3, ID#624-625);

2. <u>Various reassignments and shutdown status</u>:  The same context for Incident no. (1) applies to these incidents. The shutdown notice occurred in December, 2018, when Lazaroff began making his age-hostile comments (RE# 40-2, ID#570-571, 575-577).  Additionally, the shutdown notice occurred shortly after Plaintiff was offered a voluntary severance on 11/7/18, which he refused, and which was offered to older employees hired on or before December 31, 2006. (RE 40-4, ID#654-656).

3. <u>Poor performance review and an attendance memo</u>: On 2/16/21, Cuthbert gave Plaintiff the first poor performance review he had ever received during his 25 year career for the 2020 year (RE 40-3, ID#622-624, RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#711).  The review was more disturbing because Plaintiff had received many Team Recognitions for his contributions and on 2/12/21 an email of praise from Cuthbert (RE 40-11, ID#732-740).  Also, at the Central Office, Plaintiff was subjected to age based harassment in 2020.  In February, 2020, Mitchell told Plaintiff "they're getting rid of older guys" (RE 40-3, ID#624-625)  On August 18, 2020, Plaintiff found a picture of an old man with long hair and his eyes poked out (RE 40-3, ID#638-642, RE 40-10, ID#730).  On August 31, 2020, Plaintiff found a Michael Jackson CD which he felt was a reference to his age because Jackson was big in the 80s (RE 40-3, ID#638-642).  Plaintiff was given the attendance memo on August 9, 2019, the day after

Ferraiuolo agreed with Plaintiff that Defendant was promoting and hiring younger people and that older people were getting pushed out the door. (RE 40-2, ID#584-585, RE 40-2, ID#599)  The attendance memo was given to Plaintiff because he was missing work because of stress headaches caused by the harassment he was experiencing and where Defendant had no attendance policy for salaried employees (RE 40-2, ID#599, RE 40-3, ID#610, RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#695).

    4.  <u>Lazaroff's age-hostile comments</u>: Lazaroff's comments were made within the context of (a) Plaintiff's refusal of Defendant's VSP which was offered based on his years of service (RE 40-2, ID#589, RE 40-4, ID#654-656), (b) Defendant's announcement of the DHAM closure (RE 40-2, ID#570-571, 575-577), (c) Plaintiff's various reassignments (RE 40-2, ID#592, RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#693-694), and (d) Plaintiff's discovery of the "nasty" age hostile mousetrap picture, as well as Defendant's subsequent, inadequate investigation (RE 40-2, ID#582-583).

    5.  <u>The two pictures</u>: The mousetrap picture was age-hostile and threatening to Plaintiff and was found the day after a meeting with Lazaroff and Harwick which failed to address Plaintiff's concerns about the resistance and harassment he was receiving from Trades (RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#688).  The lower court even acknowledged that the

mousetrap picture was clearly directed toward Plaintiff was evidence of harassment and was subjectively based on Plaintiff's age (Lower court Opinion and Order, RE 42, ID#765). Despite this, the lower court discounted the objective age hostility of the mousetrap picture for the impermissible reason that Plaintiff, allegedly, had not shared his concern with Defendant. (Id.) However, under *Williams, supra.,* the subjective component of the prima facie case does not require that Plaintiff report the hostile work environment. The picture of an old man with long hair and his eyes poked out was objectively and subjectively based on Plaintiff's age (Old man picture, RE 40-10). The lower court, again, discounted this picture, like the mousetrap picture, based on the impermissible reason that Plaintiff had never reported it to Defendant which Plaintiff was not required to do as part of his prima facie case (RE 42, ID#765).

6. <u>Michael Jackson CD</u>: The CD was a reference to Plaintiff's age because Jackson was big in the 80s and was discovered less than two weeks after Plaintiff found the picture of the old man with long hair and his eyes poked out (RE 40-3, ID#638-642).

Thus, since the lower court engaged in a legally impermissible reductionist analysis of the evidence in support of Plaintiff's hostile work environment claim, it was easy to conclude that "Lazaroff's three discrete comments do not clear the 'relatively high bar for what amounts to actional discriminatory conduct…'"

(Lower court Opinion and Order, RE 42, ID#765)  Under the correct legal standard, i.e., the totality of the circumstances, Larzaroff's three age hostile remarks, in addition to the other incidents of harassment/discriminatory conduct identified by the lower court and Plaintiff, create a material question of fact in support of Plaintiff's ADEA hostile work environment claim.

**D. Plaintiff has presented questions of fact in support of his ADEA discrimination claims.**

Plaintiff has presented questions of fact in support of his ADEA discrimination claims.  The lower court dismissed these claims based on the erroneous holdings that Plaintiff: (1) had not suffered actionable adverse employment actions, and (2) had not presented sufficient evidence that younger employees were treated better than him by GM.  This Court reviews the lower court's decision on these issues *de novo*. **Williams, supra.**  Both of these determinations should be reversed because of the lower court's legal errors.

1. **Plaintiff has suffered actionable adverse employment actions.**

Plaintiff has suffered actionable adverse employment actions.  The ADEA prohibits employers from discriminating against an individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age. 29 U.S.C. §623(a).  To be actionable, adverse employment actions must be more than "de minimis."  ***Threat v. City of Cleveland, Ohio, 6 F.4th 672 (2021).***  Here, Plaintiff has suffered legally sufficient adverse

employment actions in the form of: (a) Defendant's failure to pay Plaintiff raises and bonuses commensurate with his experience, (b) Defendant's failure to pay compensation for Plaintiff's suggestions under Defendant's Suggestion Plan, and (c) Defendant's reassignments of Plaintiff to different shifts.

## a. Defendant's failure to pay Plaintiff raises and bonuses commensurate with his experience.

Defendant failed to pay Plaintiff raises and bonuses commensurate with his performance and experience. Plaintiff should have received a higher than normal raise and bonus as a result of Defendant's February, 2018, Compensation Review for his 2017 performance. (RE 40-6, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#704) The normal raise percent Plaintiff received in past years was at the 4% level, which was about average. (Id.) However, due to Plaintiff's huge savings ideas for the DHAM plant, Plaintiff's raise percent should have been higher especially since he witnessed younger DHAM employees with less contributions and experience receiving larger percent increases and bonuses. (Id.) After the performance review, Rousell told Plaintiff to produce a report documenting his contributions which he did. (Id.) When Plaintiff met with Rousell before he left the department, Rousell and Lazaroff told Plaintiff that "knowledge does not matter" and no additional compensation could be given that year. (Id.) Rousell also told Plaintiff he was "paid too much" and asked Plaintiff who he knew at his level and engineering position that was paid more. (Id.) When Plaintiff

identified Kristyn Bloom, they refused to recognize this. (Id.)  Plaintiff received only a 2.5% performance raise (which was the smallest percentage raise in his 25 years' experience) as a result of Defendant's February, 2019, Compensation Review for Plaintiff's 2018 performance. (Id., ID#704-705)  Others within Plaintiff's group with fewer contributions received increases ranging from 3.5% to 4% and, in some instances, additional profit sharing. (RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, Re 40-6, ID#705)  Plaintiff's raise percentage and bonus compensation were not reasonable based on his contributions during the previous year, including ultimately $6 million plus in savings for Defendant. (Id.)  Defendant gave Plaintiff the same percentage salary increase he had been given the previous year as a result of Defendant's February, 2020, Compensation Review for his 2019 performance. (Id.)  For that year, Plaintiff's percentage raise and bonus compensation was not reasonable also considering the major contributions the prior year while in GA Maintenance correcting many recurring downtime issues that allowed plant production rates to increase dramatically. (Id.)  Plaintiff continued to receive lower than warranted salary percentage increases and bonuses for 2020 and 2021 while younger employees got higher percentages for doing less. (40-2, ID#601)  Plaintiff received a zero percent raise and a 50% bonus reduction as a result of Defendant's 2021 performance review. (Plaintiff 3/3/23 Declaration, RE 40-5, ID#675)

**b. Defendant's failure to pay Plaintiff for his suggestions under Defendant's Suggestion Plan.**

Defendant failed to pay Plaintiff for his suggestion concerning the Elpo Carrier Tooth profile ring which was implemented at DHAM to stop the increasing issue of electrical grounding arcing that was destroying many cars and converyor carriers, as well as creating production downtime costs. (RE 40-3, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#706) Plaintiff's suggestion was implemented which resulted in conservative savings for Defendant of well over $1.5M. (Id.) Even though Plaintiff should have a received an award of at least $25K because he helped Defendant avoid what Lazaroff called a "huge problem," Donlin told Plaintiff that he was advised Plaintiff should drop the idea with no explanation. (Id., ID#706-707) Defendant did not pay Plaintiff an adequate bonus for his engine revolver equipment corrections suggestion which not only prevented production downtime but also greatly reduced the risk of death or injury to operators. (Id., ID#707) Defendant did pay Plaintiff $300 but Lazaroff made no effort to review the amount which should have been $25K. (Id., ID#707-708) Defendant did not pay Plaintiff for his Skillet LMS Cart Secure/Hold down guide suggestion because Plaintiff's idea was blocked by Lazaroff. (Id., ID#708) In fact, on June 25, 2019, when Plaintiff met with Lazaroff to change his mind, Lazaroff told him "just drop it you old fucker, you will never get paid for this." (Id.) Defendant did not pay $25K Plaintiff for his suggestion concerning the Reuse

Skillet Setup/Checking Detail Fixture because Ferraiuolo, who had initially

approved processing, denied it by falsely stating that the suggestion was part of

Plaintiff's job. (Id., ID#708-709)

### c. Defendant's reassignments of Plaintiff to different shifts.

This Court held in ***Deleon v. Kalamazoo County Road Comm'n, 739 F.3d***

***914 (2014)***, that a reassignment without changes in salary or work hours may be

an actionable adverse employment action if the particular circumstances present

some level of objective intolerability such as transfer into "some wretched

backwater." Also, in ***Threat, supra.,*** this Court specifically held that employer

required shift changes from a preferred day to another day or from day shifts to

night shifts are materially adverse employment actions. Here, in January, 2019,

Plaintiff was reassigned to GA Maintenance which was a horrible position and for

which he was not adequately trained and supported. (RE 40-2, ID#571, 573, 577,

RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#688) In

GA Maintenance, Plaintiff was immediately subjected to severe harassment,

including by the threatening "mousetrap picture" (Id., RE 40-2, ID#592, RE 40-3,

ID#650-652, Ptf Sum, Ex A to 3/21/22 Deposition, RE 40-6, ID#688; RE 36-5)

On July 10, 2019, Lazaroff notified Plaintiff that he was not required in GA

maintenance anymore based on the false assertion that Lazaroff could do all the

work himself and was transferred into the Body Shop (RE 40-3, ID#650-652, Ptf

Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#693). On August 7, 2019, Ferraiuolo notified Plaintiff that he was going to the 2nd shift which made Plaintiff an isolated outcast, did not utilize his skills and knowledge and denied him the opportunity for overtime (RE 40-2, ID#584-585, RE 40-3, ID#611). The next day, August 8, 2019, GM management gave Plaintiff an attendance memo threatening him with termination and/or negative compensation impact because Plaintiff had to take off days due to unpredictable stress headaches caused by ongoing age hostility (RE 40-2, ID#727-728, RE 40-3, ID#610, Defendant Attendance Memo, RE 40-9, ID#727-728). On February 16, 2021, Cuthbert gave Plaintiff his first bad performance review in 27 years' work with GM based on false allegations that Plaintiff disproved (RE 40-3, ID#622-624; RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#711). Then, in December, 2021, Cuthbert required Plaintiff to complete a daily task log to track his work when there was no GM Salary policy on this point (RE#40-3, ID#626-627). As discussed above, Plaintiff has not received proper compensation in the form of low percent raise increases, lower bonuses and lack of payment for his suggestions that have saved GM millions of dollars. Furthermore, as a result of all the age hostility he suffered, Plaintiff had to go on a leave of absence on January 19, 2022 (RE 40-2, ID#574). Given the foregoing, the lower court's factual finding that "the evidence does not support the conclusion that a reasonable person in plaintiff's position would find

the reassignments intolerable (Lower court Opinion and Order, RE 42, ID#759-760)" is simply not accurate.

## 2.  Defendant treated similarly situated younger employees better than Plaintiff.

Plaintiff has presented sufficient evidence in support of his prima facie case of age discrimination that younger employees have been treated more favorably than him.  This Court has held that the prima facie case is meant simply to force a defendant to proceed with its case.  ***Jackson v. VHS Detroit Receiving Hosp., Inc., 814 F.3d 769 (2016).***  This Court has further admonished lower courts that the plaintiff's burden at the prima facie stage is not onerous and "poses a burden easily met." ***Id.*** Under this standard, Plaintiff has met his burden.  Plaintiff has presented evidence in support of his prima facie case that Andrea Hellen (mid 30s) received a higher raise percentage than him. (RE 40-3, ID#606)  Jason Rousell confirmed that a control engineer in his mid-30s was more fairly compensated in 2017 or 2018 than Plaintiff. (Id., ID#606-607)  Ali Tarraf, Ron Perez, Mohamed Ali, Mike Subic, Jr., and Trevor Mentje are all younger employees than Plaintiff who received positions without the need for a resume or interview. (Id., ID#630-635, 637; RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#703, 719)  Lastly, Siarhei Tsahelnik, younger and less experienced, got Plaintiff's position from Lazaroff as GA Maintenance Lead. (Id., ID#646-647; RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#694)

The lower court did not actually consider the evidence Plaintiff presented in support of his ADEA prima facie case that younger employees were treated better than him. (Lower court Opinion and Order, RE 42, ID#761)  Rather, relying on the holding in ***Mav Michigan, Inc., v. American Country Ins. Co., 289 F.Supp.2d 873 (E.D. Mich. 2003)***, the lower court (in a footnote) mischaracterized the evidence Plaintiff had presented of more favorably treated comparators as "self-serving, unsupported conclusory arguments" which was not sufficient to create an issue of fact. (RE 42, ID#761-762)  Clearly, the lower court did not apply the correct, not onerous, prima facie discrimination case burden that Plaintiff easily has met.  The lower court's application of the incorrect legal standard is made manifest by its reliance on the ***Mav Michigan, Inc.*** decision which does not even involve a discrimination claim but rather a property insurance coverage dispute.

**E.  Plaintiff has presented sufficient material issues of fact in support of his ADEA retaliation claim.**

Plaintiff has presented sufficient material questions of fact in support of his ADEA retaliation claim.  First, Plaintiff engaged in protected activity as a result of which GM retaliated against him.  Second, GM's adverse employment actions were caused by Plaintiff's protected activities.  This Court reviews the lower court's decision on these issues *de novo*. ***Williams, supra.***

**1.  <u>Plaintiff engaged in legally sufficient protected activity to support his ADEA retaliation claim.</u>**

Plaintiff engaged in legally sufficient protected activity to support his ADEA retaliation claim. To engage in legally sufficient protected activity, Plaintiff must establish that he challenged an employment practice that he reasonably believed was unlawful. ***Yazdian v. ConMed Endoscopic Technologies, Inc. 793 F.3d 634 (2015)***. For example, a demand that a supervisor cease his harassing conduct constitutes protected activity. ***Id.*** In fact, there is no requirement that Plaintiff's complaint be lodged with absolute formality, clarity or precision. ***Id.*** Further an employee, such as Plaintiff, who opposes a hostile work environment need not prove that the environment he complained of was actually hostile in order to receive protection from retaliation. ***Id.*** Moreover, protected activity includes complaints to co-workers, reporters, as well as managers, and, as a result, to whom Plaintiff made statements opposing discrimination is immaterial to the viability of his retaliation claim. ***Id.*** Applying these principles to the instant case, Plaintiff has engaged in repeated acts of protected activity where he opposed GM's ongoing age hostility and harassment.

On March 8, 2019, Plaintiff complained to his supervisor, Lazaroff, about calling him degrading names and mentioned the mistreatment he received earlier in the year with placement opportunity and proper compensation. (RE 40-3, ID#650-652, Plaintiff's Summary, Exhibit A, to 3/21/22 Deposition, RE 40-6, ID#686) On May 30, 2019, Plaintiff complained to GM HR's investigator about the "mousetrap

picture" and mentioned that he was being treated very differently from past GA

Maintenance leads who would not have continued in the position with such

treatment.[15] (RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6,

ID#690)  Also, at this meeting, Plaintiff stated that he was already getting harassed

before the threatening image and mentioned that he expected HR to perform a

thorough investigation. (Id.)  Later the same day, Donlin told Plaintiff that the

"mousetrap" incident was "absolutely harassment." (Id.)  On June 6, 2019, Plaintiff

told HR that he was surprised that more progress had not been made since the first

HR meeting and that he hoped to get results to provide relief from the stress. (Id.,

ID#690-691)  Plaintiff also questioned the minimal anti-harassment training given

to Trades. (Id.)  On July 16, 2019, Plaintiff complained to Donlin, Lazaroff's boss,

that Lazaroff had called him names such as "old fucker," "my bitch," as well as

"motherfucker," and that on March 8, 2019, Lazaroff had threatened to remove

him from the plant. (Id., ID#687)  Plaintiff also told Donlin that Lazaroff's

behavior was abuse and that his name calling needed to be further investigated, as

well as verified by witnesses. (Id.)  On August 7, 2019, Plaintiff complained to

Ferraiuolo that his move to 2nd shift was pure harassment. (RE 40-2, ID#584-585)

---

[15]Plaintiff averred in his December 11, 2019 MDCR charge that "In May I reported that there was a drawing posted at my worksite showing me lying dead in a trap.  I immediately reported the incident to the respondent's managers and explained that I felt the drawing was made because of my age and as recently as June 2019 the respondent's manager called me old and directed profanities at me." (MDCR Charge, RE 26-15, ID#351)

Ferraiuolo agreed with Plaintiff that GM was promoting and hiring young people while old people were kind of getting pushed out the door (Id.). On August 8, 2019, after GM management gave Plaintiff the attendance memo, Plaintiff stated that the issues caused by his stress headaches stemmed from Lazaroff's abuse and name calling. (RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#695) On December 11, 2019, Plaintiff filed his MDCR Charge (MDCR Charge, RE 26-15) and then, on June 24, 2021, Plaintiff filed the instant case. All of this is legally sufficient protected activity by Plaintiff under *Yazdian, supra.,* since he was challenging employment practices which he believed to be unlawful harassment.

The lower court determined that Plaintiff had not engaged in protected activity in support of his ADEA retaliation claim based on the finding that Plaintiff made an internal complaint in May, 2019, about the mousetrap picture but never informed Defendant that he believed the picture was related to his age. (Lower court Opinion and Order, RE 42, ID#766) This finding is incorrect because Plaintiff did notify his managers that he believed the mousetrap picture was made because of his age and part of ongoing age based harassment. (Mousetrap picture, RE 26-15, ID#351) Further, the very act of filing a Charge of Discrimination with the MDCR on December 11, 2019, indicates Plaintiff believed he was being subjected to illegal, age based harassment and discrimination, which evidence the

district court ignored. The lower court's holding is also incorrect because the facts in ***Fox v. Eagle Distrib. Co, 510 F.3d 587 (6th Cir. 2007)***, upon which it relied, are different from the case *sub judice.*

In ***Fox*** this Court held the plaintiff had not engaged in protected activity because his complaints that he intended to sue the defendant company, that upper management was out to get him and that management had prevented him from becoming a pre sell rep were ambiguous. In contrast, Plaintiff's repeated complaints about age based harassment to Defendant (which he also raised to the MDCR) as set forth above are similar to the protected activity in ***Yazdian, supra.*** In **Yazdian,** this Court, after distinguishing the ***Fox*** fact scenario*,* held that the plaintiff's complaints, which included complaints about the hostile work environment and a statement that plaintiff would respond with charges, challenged employment practices he reasonably believed were unlawful. Like ***Yazdian,*** Plaintiff complained about Defendant's harassment to challenge employment practices he felt were illegal. Because of the foregoing, the lower court committed reversible error on this issue.

**2.**  **Plaintiff has presented sufficient material evidence to create a question of fact that his protected activities caused Defendant's adverse employment actions.**

Plaintiff has presented sufficient material evidence to create a question of fact that his protected activities caused Defendant's adverse employment actions.

As part of his prima facie case, Plaintiff must present proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful actions of the employer. *Yazdian, supra.* Further, where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. *Id.* Lastly, Plaintiff's burden to establish a prima facie case of retaliation is a burden "easily met." *Id.* Applying these principles to the instant case, Plaintiff has presented the following evidence that GM's adverse employment actions would not have occurred in the absence his protected activities:

(1) In January, 2019, Plaintiff was reassigned to GA Maintenance without proper training and support shortly after Lazaroff called Plaintiff an "old fart" in December, 2018, and "old fucker" in January, 2019, as well as before Plaintiff had a "visit" to Toledo plant for possible reassignment (RE 40-2, ID#570-571, 575-577, RE 40-2, ID# 571, 573, 577, RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#688) ;

(2) On March 8, 2019, Lazaroff threatened Plaintiff that he could remove Plaintiff from the plant anytime he wanted (RE 40-3, ID#650-652);

(3) In June, 2019, GM HR closed its inadequate investigation into the threatening "mousetrap picture," which Plaintiff found on May 22, 2019, without any conclusion while blaming Plaintiff for the misconduct (Defendant 6/19/19 Investigation Summary, R 26-9, ID#314-328, RE 40-3, ID#645-646);

(4) On July 10, 2019, about one hour after Plaintiff sent an email to Donlin to HR to finish a thorough investigation into the "mousetrap picture,"

Lazaroff notified Plaintiff that he was not required in GA Maintenance anymore (RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#693);

(5) On August 7, 2019, Ferraiuolo notified Plaintiff that he would be moved to the 2nd shift, which created a hardship for Plaintiff, while acknowledging that GM's policy was to promote and hire younger employees while pushing the older ones out. This occurred shortly after Plaintiff had complained to Donlin on July 16, 209, about Lazaroff's age hostile remarks and threat to remove him (RE 40-2, ID#584-585, RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#687);

(6) On August 8, 2019, GM managers gave Plaintiff an unwarranted attendance memo which threatened Plaintiff with termination and/or negative compensation consequences because Plaintiff was taking time off due to unpredictable stress headaches caused by GM's age hostility. This occurred shortly after Plaintiff complained on July 16, 2029 to Donlin about Lazaroff's age hostile comments and threat to remove him (RE 40-2; ID#599, RE 40-3, ID#610, RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#687, RE 40-9, ID#727-728);

(7) In February, 2020, around the time GM became aware of Plaintiff's MDCR charge, Mitchell told Plaintiff, after he mentioned he hadn't been doing well because of the harassment, "They're getting rid of older guys, and I ran across some of that in my last Arlington job" (RE 40-3, ID#624-625);

(8) On February 16, 2021, Cuthbert gave Plaintiff the first bad performance review based on false information he had received in 27 years' service (RE 40-3, ID#622-624, RE 40-3, ID#650-652, Ptf Sum Ex A to 3/21/22 Deposition, RE 40-6, ID#711); and

(9) in December, 2021, after Plaintiff filed the instant action on June 24, 2021, Cuthbert falsely accused Plaintiff of not doing his job and directed him, without precedent or policy, to track or log his daily activities (RE 40-3, ID#626-627).

All of the foregoing evidence establishes a causal connection between

Plaintiff's protected activities and Defendant's adverse employment actions,

especially given the temporal proximity between them. The lower court was legally incorrect to limit Plaintiff's protected activity to just his December 11, 2019 MDCR Charge filing under the ***Yazdian, supra.,*** holding. (RE 42; ID#767) Under ***Yazdian,*** the lower court should have considered, but did not, whether Plaintiff's pre-MDCR Charge protected activities resulted in retaliation from Defendant. Because of this, the lower court committed reversible error.

## X. <u>CONCLUSION</u>

WHEREFORE, Plaintiff respectfully requests that this Court reverse the lower court's April 27, 2023 Opinion and Order Granting Defendant's Motion for Summary Judgment and accord him any other relief deemed just and necessary.

Respectfully submitted,

Date: August 24, 2023       By:___*/s/Eric I. Frankie*_____
                                   Eric I. Frankie (P47232)
                                   Attorney for Plaintiff
                                   3000 Town Center, Ste. 1820
                                   Southfield, MI 48075
                                   (248) 219-9205
                                   ericfrankie26@yahoo.com

## XI. <u>CERTIFICATE OF COMPLIANCE</u>

I, Eric I. Frankie, certify on August 24, 2023 that this document complies with the word limit of FRAP 32(a)(7) because excluding the parts of the document exempted by FRAP 32(f) this document contains approximately 11,285 words.

_____*/s/Eric I. Frankie*_____

## XII.  CERTIFICATE OF SERVICE

I, Eric I. Frankie, certify that on August 24, 2023, the foregoing instrument and this Certificate of Service were served on all counsel of record by electronic filing with the Court's ECF electronic filing system.

_____/s/Eric I. Frankie_____


## XIII.  ADDENDUM WITH DESIGNATION OF RELEVANT ORIGINATING COURT DOCUMENTS

1.  Plaintiff's 6/24/21 Complaint. (RE 1)

2.  Defendant-Appellee's 11/30/22 Motion for Summary Judgment. (RE 26)

3.  Plaintiff-Appellant's 3/3/32 Response to Defendant's Motion for Summary Judgment. (RE 40)

4.  The lower court's 4/27/23 Opinion and Order Granting Defendant's Motion for Summary Judgment (ECF NO. 26). (RE 42)

5.  The lower court's 4/27/23 Judgment. (RE 43)

6.  Plaintiff-Appellant's 5/23/23 Notice of Appeal. (RE 44)