No. 23-1462

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DOUGLAS MILCZAK,
        Plaintiff-Appellant,

v.

GENERAL MOTORS, LLC,
        Defendant-Appellee.

On Appeal from the United States District Court
for the Eastern District of Michigan – Southern Division
No. 21-cv-11484

BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION AS AMICUS CURIAE IN SUPPORT OF
APPELLANT AND IN FAVOR OF REVERSAL

GWENDOLYN YOUNG REAMS
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ELIZABETH E. THERAN
Assistant General Counsel

TARA PATEL
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2770
Tara.Patel@EEOC.gov

# TABLE OF CONTENTS

Table of Authorities ................................................................................. ii

Statement of Interest ...............................................................................1

Statement of the Issues ...........................................................................2

Statement of the Case .............................................................................2

   A.  Statement of the Facts ...............................................................2

   B.  District Court's Decision.............................................................9

Argument ..............................................................................................11

   I.   A reasonable juror could find that GM's involuntary job transfers and reassignment of Milczak impacted the compensation, terms, and conditions of his employment and caused more than a de minimis impact. ..........................................................................................11

   II.  Milczak generally alleged a hostile work environment in his administrative charge and thus satisfied the charge-filing requirement..22

Conclusion.............................................................................................31

Certificate of Compliance .....................................................................32

Certificate of Service .............................................................................33

Addendum

  Designation of Relevant District Court Documents A-1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. USF Holland, Inc.,*
526 F.3d 880 (6th Cir. 2008) ............................................................29

*Burlington N. & Santa Fe Ry. Co. v. White,*
548 U.S. 53 (2006) ....................................................................17, 18

*Chambers v. District of Columbia,*
35 F.4th 870 (D.C. Cir. 2022) (en banc) ..................................16, 19

*Crawford v. Medina Gen. Hosp.,*
96 F.3d 830 (6th Cir. 1996) ............................................................12

*Davis v. Sodexho, Cumberland Coll. Cafeteria,*
157 F.3d 460 (6th Cir. 1998) ....................................................25, 27

*Deleon v. Kalamazoo Cnty. Rd. Comm'n,*
739 F.3d 914 (6th Cir. 2014) ....................................................passim

*EEOC v. Shell Oil Co.,*
466 U.S. 54 (1984) ....................................................................23, 24

*Fed. Express Corp. v. Holowecki,*
552 U.S. 389 (2008) ........................................................................23

*Grace v. USCAR,*
521 F.3d 655 (6th Cir. 2008) ..........................................................27

*Green v. Brennan,*
578 U.S. 547 (2016) ........................................................................19

*Gross v. FBL Fin. Servs.,*
557 U.S. 167 (2009) ........................................................................12

*Harris v. Forklift Sys., Inc.,*
510 U.S. 17 (1993) ....................................................................26, 28

*Jackson v. Quanex Corp.*,
    191 F.3d 647 (6th Cir. 1999) ..........................................................28

*Lorillard v. Pons*,
    434 U.S. 575 (1978) ........................................................................12

*Meritor Sav. Bank, FSB v. Vinson*,
    477 U.S. 57 (1986) ....................................................................12, 29

*Muldrow v. City of St. Louis*,
    No. 22-193, 2023 WL 4278441 (S. Ct. June 30, 2023) ...................12

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) ........................................................................25

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998) ..........................................................................26

*Policastro v. Nw. Airlines, Inc.*,
    297 F.3d 535 (6th Cir. 2002) ..........................................................19

*Randolph v. Ohio Dep't of Youth Servs.*,
    453 F.3d 724 (6th Cir. 2006) ....................................................23, 29

*Spees v. James Marine, Inc.*,
    617 F.3d 380 (6th Cir. 2010) ..........................................................15

*Spence v. Donahoe*,
    515 F. App'x 561 (6th Cir. 2013) ....................................................26

*Thornton v. Fed. Express Corp.*,
    530 F.3d 451 (6th Cir. 2008) ..........................................................25

*Threat v. City of Cleveland*,
    6 F.4th 672 (6th Cir. 2021) ......................................................*passim*

*United States v. Abboud*,
    438 F.3d 554 (6th Cir. 2006) ..........................................................19

*Waggoner v. Carlex Glass Am., LLC*,
    682 F. App'x 412 (6th Cir. 2017) ....................................................26

*White v. Burlington N. & Santa Fe Ry. Co.*,
364 F.3d 789 (6th Cir. 2004) (en banc) .................................................9, 17, 18

*Williams v. CSX Transp. Co.*,
643 F.3d 502 (6th Cir. 2011) ...........................................................................25

*Younis v. Pinnacle Airlines, Inc.*,
610 F.3d 359 (6th Cir. 2010) ......................................................................11, 30

*Younis v. Pinnacle Airlines, Inc.*,
No. 2:07-cv-02356, 2008 WL 11411604 (W.D. Tenn. Aug. 14,
2008) ...............................................................................................................30

## Statutes

29 U.S.C. § 621 ..................................................................................................1

29 U.S.C. § 623(a)(1) ...................................................................................*passim*

29 U.S.C. § 623(d) ...........................................................................................18

29 U.S.C. § 626(d) ........................................................................................1, 22

29 U.S.C. § 628 ................................................................................................22

42 U.S.C § 2000e–2(a) ......................................................................................12

## Rules & Regulations

29 C.F.R. § 1625.2 .............................................................................................15

29 C.F.R. § 1626.6 ................................................................................22, 24, 27

Federal Rule of Appellate Procedure 29(a)(2) ....................................................1

## Other Authorities

Br. for the U.S. as Amicus Curiae Supporting Respondent, *Fort
Bend Cnty. v. Davis*,
No. 18-525, 2019 WL 1489048 (S. Ct. April 1, 2019)....................................23

Br. of the United States as Amicus Curiae, *Muldrow v. City of St. Louis*,
  No. 22-193 (S. Ct. May 18, 2023)......................................................................16

En Banc Br. of the United States and EEOC as Amicus Curiae,
  *Chambers v. District of Columbia*,
  No. 19-7098, 2020 WL 1432198 (D.C. Cir. March 12, 2020) ........................16

En Banc Br. of the United States and EEOC as Amicus Curiae,
  *Hamilton v. Dallas Cnty.*,
  No. 21-10133, 2022 WL 17370136 (5th Cir. Nov. 21, 2022) ........................16

EEOC Compliance Manual § 15-VII(B)(1), 2006 WL 4673430 (2006)..........15

## STATEMENT OF INTEREST

Congress tasked the Equal Employment Opportunity Commission (EEOC) with administering and enforcing the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 *et seq.* Section 623(a)(1) of the ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his … compensation, terms, conditions, or privileges of employment, because of such individual's age." Section 626(d) requires that an individual file a charge of discrimination with the EEOC prior to filing a civil action.

This appeal involves the proper standards for deciding (1) whether an employer's challenged actions affect the "compensation, terms, [or] conditions" of employment under the ADEA and (2) whether an individual has included sufficient detail in his charge to satisfy the ADEA's charge-filing requirement. Because the EEOC has a strong interest in ensuring that courts apply the correct standards to the statutes it enforces, it offers its views to this Court pursuant to Federal Rule of Appellate Procedure 29(a)(2).

# STATEMENT OF THE ISSUES[1]

1.  Whether a reasonable juror could find that the defendant's involuntary job transfers and reassignment of the plaintiff impacted the compensation, terms, or conditions of the plaintiff's employment and caused more than a de minimis impact.

2.  Whether the allegations in plaintiff's administrative charge satisfied the ADEA's charge-filing requirement with regard to his hostile work environment claim.

# STATEMENT OF THE CASE

## A.   Statement of the Facts[2]

Defendant General Motors ("GM") employed Plaintiff Douglas Milczak, who was fifty-nine years old in early 2023, from August 1994 to the present. R.26-2, Milczak Dep., PageID#130-31. He has maintained the title of "senior manufacturing engineer" throughout his GM career but has transferred locations and responsibilities several times. *Id.* at PageID#143.

---

[1] We take no position on any other issue in this appeal.

[2] Because we take no position on the district court's decision to exclude from evidence the plaintiff's declaration and summary, R.42, Opinion & Order Granting Defendant's Motion for Summary Judgment ("Op."), PageID#756-58, we do not rely on this evidence in our analysis.

From 1994 to 2015, Milczak worked in GM's conveyor group, where he oversaw the establishment of conveyor systems in different plants across the country. *Id.* at PageID#130-31.

Starting in 2016, Milczak worked exclusively at the Detroit-Hamtramck Plant ("DHAM"), where he reported to supervisor Mike Lazaroff and worked on resolving manufacturing issues. *Id.* at PageID#132-35,139. According to Milczak, Lazaroff called him "old" three times—in December 2018 ("old fart"), in January 2019 ("old fucker"), and in June 2019 ("old motherfucker")—and frequently directed profanities at Milczak ("my bitch" and "motherfucker"), which Milczak claimed were due to his age. *See id.* at PageID#145-151; R.40-2, Milczak Dep., PageID#577. Milczak testified that he asked Lazaroff to "stop calling me names" on a couple of occasions but that Lazaroff "went back to the same thing." R.40-2, Milczak Dep., PageID#578.

In January 2019, GM announced that DHAM was closing so that it could be retooled to manufacture electric vehicles. R.26-8, Tackett Decl ¶ 2, PageID#250; R.26-3, Lazaroff Dep., PageID#207. GM requested that employees apply for transfers to other plants or risk termination. R.26-8, Tackett Decl ¶ 2, PageID#250. Milczak did not transfer to another plant.

Rather, GM transferred him from his plant-engineering role to a general assembly ("GA") maintenance role, which involved different responsibilities, to fill the role of an employee who had moved to another plant. R.26-2, Milczak Dep., PageID#140-141. The transfer occurred right around the time that Lazaroff called Milczak an "old fart," *id.* at PageID#145 (December 2018), and "old fucker," *id.* at PageID#145,148 (Milczak testifying that Lazaroff told him in January 2019 that another plant "might not want an old fucker like you.").

Milczak stated that he "didn't have any choice" on the transfer—in fact, he had told Lazaroff "back when I [was] hired … in 2016 I did not want to be [in] maintenance." R.40-2, Milczak Dep., PageID#577. He testified that his GA-maintenance role was different than his plant-engineering role, R.26-2, Milczak Dep., PageID#140-41, and that it came with "harassment." R.40-2, P Milczak Dep., PageID#577; R.26-9, HR Investig. Rep., PageID#314. In the GA-maintenance role, Milczak ended up "having trouble with the skilled trades," who would not follow his instructions. R.40-2, Milczak Dep., PageID#591. When he asked his supervisors for help, they simply replied that "[t]rades are a bitch to work with." *Id.* at PageID#592. Overall, Milczak testified, he found the new

position "high-stress," a strain on his marriage due to the long hours, and "a horrible job to perform." R.40-2, Milczak Dep., PageID#571,577; R.26-11, Shift Change Emails, PageID#335.

On May 22, 2019, Milczak found, in the GA work area, a cartoon-style drawing of a dead mouse caught in a trap, with other mice surrounding and sexually assaulting the dead mouse. R.26-9, HR Investig. Rep., PageID#314; R.26-5, Mousetrap Picture, PageID#226. The mice were each labeled in block handwriting: the trapped mouse was labeled "DOUG," while the other mice were named for the Trades such as Pipefitter, Millwright, ToolMaker, and Electrician. R.26-5, Mousetrap Picture, PageID#226. A handwritten statement below the picture read: "When you're down and out everyone wants to screw you." *Id.*

Milczak reported the picture to HR, which in turn investigated the incident by interviewing workers and checking printer history. R.40-8, HR Investig. Email, PageID#725; R.26-9, HR Investig. Rep., PageID#314-15. Milczak questioned the completeness of the investigation, stating that the interviews lasted only a couple minutes and that HR did not run a handwriting analysis. R.26-2, Milczak Dep. PageID#159-60. In addition, according to Milczak, HR representatives told him that the picture was not

threatening. *Id.* at PageID#160-161. Because the investigation did not reveal a perpetrator, HR provided a two-hour anti-harassment training to the trade employees, which Milczak stated fell far short of the two-day anti-harassment training given to salaried employees. R.26-2, Milczak Dep., PageID#160-161; R.40-8, HR Investig. Email, PageID#725.

In approximately June 2019, Milczak testified, he suggested a cost-saving engineering solution to Lazaroff, who responded, "drop it, you old motherfucker." R.26-2, Milczak Dep., PageID#151. In July, GM transferred Milczak to the Body Shop. R.26-8, Tackett Decl. ¶¶8-9, PageID#251-252. According to Milczak, GM replaced him in GA maintenance with a "younger guy that had no real experience in manufacturing." R.26-2, Milczak Dep., PageID#163; *see also id.* at PageID#140; R.40-3, Milczak Dep., PageID#608-609. In addition, Milczak believed he was being ousted from GA maintenance for reporting the mouse photo to HR. R.40-3, Milczak Dep., PageID#646-648.

A month after GM transferred Milczak to the Body Shop, it reassigned him to the Body Shop's "second shift," where he worked from around 2 p.m. to 10:30 p.m. daily. R.26-2, Milczak Dep., PageID#154-155; R.26-8 Tackett Decl. ¶¶8-9, PageID#251-252. Milczak testified that, when he

was discussing the reassignment with Body Shop supervisor Damon Ferraiuolo, Ferraiuolo agreed with him that GM was promoting and hiring younger people and pushing out older people. R.26-2, Milczak Dep., PageID#152-153.

Milczak opposed the second-shift reassignment for several reasons: he did not have the same opportunities to receive overtime compensation, the late hours placed even more stress on his marriage, and the position did not utilize his skillsets. R.26-2, Milczak Dep., PageID#152,155,166; R.26-11, Shift Change Emails, PageID#335. On second shift, he shared, "there was nothing to do … I was sitting isolated like an outcast … that's stressful when you are by yourself…. [A]ll my knowledge and skill and all that, I helped them with running production before that, it's wasted, because I'm sitting there during a non-production shift." R.26-2, Milczak Dep., PageID#155.

Milczak worked the second shift from late August 2019 to early January 2020, when he switched to his current position in DHAM's central office. R.26-2, Milczak Dep., PageID#142-143. Milczak's general pay and benefits did not change with his transfers and reassignment. R.26-10, Ferraiuolo Decl. ¶6,10 PageID#331; R.26-2, Milczak Dep., PageID#166. In

August 2020, Milczak found "a picture of an old man, long hair, with eyes poked out" on his desk at the central office but did not report the picture to HR. R.26-2, Milczak Dep., PageID#175-178,180-181.

In December 2019, Milczak dual-filed a charge of discrimination with the EEOC and Michigan Department of Civil Rights ("MDCR"). R.26-15, Charge of Discrimination, PageID#351. He listed that the "cause of discrimination" was based on "Retaliation, Age" and specified that he was both "disciplined" and "subjected to harassment" due to his age and engagement in protected activity. *Id.* He then drafted the charge narrative in two sections—"Discipline" and "Harassment"—noting that each was for "age, retaliation." *Id.* Under "Harassment," he gave a lengthy account of his workplace experience. Specifically, he reported:

> In May 2019 I reported that there was a drawing posted at my worksite showing me lying dead in a trap. I immediately reported the incident to the respondent's managers and explained that I felt the drawing was made because of my age and as recently as June 2019 the respondent's manager called me old and directed profanities at me. On July 15, 2019 I was transferred to another department and my previous position was filled by a younger employee. On August 8, 2019 I was disciplined for an alleged attendance policy violation and later on August 26, 2019 I was transferred to the second shift which resulted in my losing the opportunity for overtime as recently as November 1, 2019. Later on or about November 18, 2019 the respondent's managers informed me that even though I

qualified for a suggestion bonus, it would not be given to me. I reached out to the respondent's managers multiple times beginning in May 2019 and complained that this conduct and the transfers were based on my age and protected activities, however, my concerns were never addressed.

*Id.* After receiving a right-to-sue letter, Milczak timely filed his complaint.

## B. District Court's Decision

In relevant part, as to Milczak's age-discrimination claim, the district court found that neither the job transfers nor the reassignment amounted to an adverse employment action under the ADEA. R.42, Opinion & Order Granting Def's MSJ ("Op."), PageID#758-60. Adverse actions, according to the court, are "defined as a 'materially adverse change in the terms and conditions of a plaintiff's employment.'" *Id.* at PageID#758 (citing *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc)). "A reassignment that does not change salary, benefits or title, may still constitute an adverse action" where "the circumstances give rise to some level of objective intolerability." *Id.* at PageID#759 (citing *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 919 (6th Cir. 2014)).

According to the court, the "circumstances" giving rise to Milczak's job transfers and reassignment were that GM would be unallocated, "meaning that current vehicle manufacturing would stop" — "[s]ome

employees were given involuntary layoffs, others found new jobs within GM, and some were reassigned to cover staff shortages." *Id*. In each of the transfers, stated the court, Milczak "performed the same basic job duties and received the same pay and benefits" as his prior position. *Id.* The court recounted that Milczak was subjected to harassment in the new positions, and found them "stressful," which impacted his marriage. *Id.* Nevertheless, the court found, these factors did "not support the conclusion that a reasonable person in plaintiff's position, would find [them] intolerable." *Id.* at PageID#760.

As to Milczak's hostile-work-environment claim, the court rejected it in part because "[i]n his EEOC charge, plaintiff … did not allege a hostile work environment." *Id.* at PageID#762. The court described Milczak's charge as "cit[ing] two discrete discriminatory acts—the May 2019 mousetrap drawing which he states that he told his manager he felt was made because of his age, and that in June 2019 his manager called him old and directed profanities at him. He also describes his job reassignments, being charged with an attendance violation, and being denied a suggestion bonus." *Id.* at PageID#763 (citations omitted). It ultimately found that only one allegation in the charge was age-related: "the fact that on one occasion

his manager called him old." *Id.* The court discounted the mousetrap allegation because "[t]his account conflicts with plaintiff's deposition testimony, where he stated that he did not tell anyone that he thought the picture was related to his age." *Id.* at PageID#763 n.2. It then concluded that "[o]ne discrete discriminatory act is insufficient to establish a hostile work environment claim for purposes of exhaustion." *Id.* at PageID#763 (citing *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010)).

## ARGUMENT

**I.  A reasonable juror could find that GM's involuntary job transfers and reassignment of Milczak impacted the compensation, terms, and conditions of his employment and caused more than a de minimis impact.**

The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In *Threat v. City of Cleveland*, 6 F.4th 672 (6th Cir. 2021), this Court construed the analogous provision of Title VII to hold, based on a plain reading of the statutory text, that a shift

change counts as a "term of employment."[3] *Id.* at 677 ("If the words of Title VII are our compass," the analysis "is straightforward" …. "How could the *when* of employment not be a *term* of employment?"). *Threat*'s plain-text reading of the statute comports with the Supreme Court's direction that "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 175 (2009) (citation and quotation marks omitted). It also aligns with the Supreme Court's recognition that the phrase "terms, conditions, or privileges of employment … is an expansive concept" with a broad sweep. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (citation omitted).[4]

---

[3] Courts interpret Section 623(a)(1) of the ADEA and Section 703(a)(1) of Title VII interchangeably. *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996); *Lorillard v. Pons*, 434 U.S. 575, 584 & n.12 (1978).
[4] We note that, in the upcoming term, the Supreme Court in *Muldrow v. City of St. Louis*, No. 22-193, 2023 WL 4278441 (S. Ct. June 30, 2023), is expected to rule on an issue nearly identical to the one presented in this case. *See* Order List, at 2 (S. Ct. June 30, 2023) (granting certiorari "limited to the following question:  Does Title VII prohibit discrimination in transfer decisions absent a separate court determination that the transfer decision caused a significant disadvantage?").

In *Threat*, this Court further noted that although the "adverse employment action" and "materiality" requirements are "innovations" absent from the statutory text, they are best understood as "shorthand for the operative words in the statute." 6 F.4th at 678-79. "To 'discriminate' reasonably sweeps in some form of an adversity and a materiality threshold. It prevents the undefined word 'discrimination' from commanding judges to supervise the minutiae of personnel management." *Id.* at 678 (citation omitted) (cleaned up).

Such innovations, according to *Threat*, also "honor[] a de minimis exception that forms the backdrop of all laws" so as to discourage lawsuits over "the pettiest forms of workplace misconduct." *Id.* at 678, 680. Importantly, the court emphasized, "de minimis means de minimis …. [t]o give the de minimis rule too broad a reach would contradict congressional intent by denying proper effect to a statute." *Id.* at 679 (citation and quotation marks omitted). Thus, this Court concluded, "employer-required shift changes from a preferred day to another day or from day shifts to night shifts exceed any de minimis exception, any fair construction of the anchoring words of Title VII, and for that matter any Article III injury requirement." *Id.* Ultimately, this Court said, whether a given transfer or

shift change is actionable depends on the factual context of the particular case. *Id.* (disavowing a "categorical" rule that actionable discrimination claims never cover shift changes).

This case involves two involuntary job transfers and one reassignment. The first transfer was from a plant-engineering role to a GA maintenance role that came with different job responsibilities, higher stress, work hours that impacted Milczak's marriage, and working with different employees. The second transfer was from the GA maintenance role to the Body Shop, where Milczak was subsequently reassigned a month later from the first to the second shift.[5] The second shift of the Body Shop, according to Milczak, came with different job duties (including a significant reduction of meaningful work that involved Milczak's skillsets), a change in his daily start and end times, a change in overtime compensation opportunities, and even higher stress that impacted his marriage.

_____

[5] The district court uses the terms "transfers" and "reassignment" interchangeably. *See, e.g.*, R.42, Op., PageID#751,753,759. We differentiate between the terms as just described.

Under this Court's direction in *Threat*, both transfers and the reassignment plainly impacted the compensation, terms, or conditions of Milczak's employment in more than a de minimis way. The when, where, and what of a job—including the particular work the employee is required to do, the type of employees they work with, their hours of work, and the ability to earn overtime compensation—fall squarely within the compensation, terms, or conditions of employment, and exceed the de minimis "backdrop." *See Threat*, 6 F.4th at 677; *id.* at 678 (finding that a shift change "fits comfortably within the statutory phrase"); *Spees v. James Marine, Inc.*, 617 F.3d 380, 392 (6th Cir. 2010) (finding that a shift change that affected plaintiff's ability to raise her daughter fell within the scope of Title VII even where the "employee's responsibilities and wages are left unchanged" (citation omitted)); *see also* EEOC Compliance Manual § 15-VII(B)(1), 2006 WL 4673430 (2006) ("Work assignments are part-and-parcel of employees' everyday terms and conditions of employment …").[6]

---

[6] *Threat* is binding precedent in this Court. But, in the EEOC's view, *all* forced job transfers, denials of job transfers, and reassignments categorically fall within the scope of 29 U.S.C. § 623(a)(1). *See, e.g.*, 29 C.F.R. § 1625.2 (explaining that the ADEA bars "discriminat[ion] against an individual *in any aspect of employment* because that individual is 40 years old or older," unless a statutory exception applies) (emphasis added);

In rejecting the transfers and reassignment at issue here as insufficiently "adverse" to be actionable, the district court made three fundamental errors: it applied the wrong legal standard, it omitted key facts from its analysis, and it conflated the elements of an ADEA discrimination claim.

First, instead of applying *Threat*'s governing standard for evaluating discrimination claims, the district court misconstrued this Court's *Deleon* decision and imported legal standards from two entirely different areas of law: retaliation and constructive discharge. *See* R.42, Op., PageID#758-760. In *Deleon*, this Court held that a job transfer could constitute an adverse action for purposes of a discrimination claim, even without a change in

_____

*Chambers v. District of Columbia*, 35 F.4th 870, 874-875 (D.C. Cir. 2022) (en banc) (holding that "the straightforward meaning of the statute [Title VII] … emphatic[ally]" prohibits all discriminatory transfers). We have advanced this argument across multiple circuits and in the Supreme Court, often in conjunction with the Justice Department. *See, e.g.*, Br. of the United States as Amicus Curiae, *Muldrow v. City of St. Louis*, No. 22-193 (S. Ct. May 18, 2023); En Banc Br. of the United States and EEOC as Amicus Curiae, *Hamilton v. Dallas Cnty.*, No. 21-10133, 2022 WL 17370136 (5th Cir. Nov. 21, 2022); En Banc Br. of the United States and EEOC as Amicus Curiae, *Chambers v. District of Columbia*, No. 19-7098, 2020 WL 1432198 (D.C. Cir. March 12, 2020).

salary, benefits, title, or work hours. 739 F.3d at 919-20. Although *Deleon* involved no retaliation claim, the court nevertheless based its adversity analysis on precedent of the Supreme Court and this Court construing the adverse-action requirement in the retaliation context. *Id.* at 918-19 (citing *White v. Burlington N. & Santa Fe Ry. Co.,* 364 F.3d 789 (6th Cir. 2004) (en banc), and *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006)).

Building on this foundation, *Deleon* then observed that a transfer that constitutes a constructive discharge may be an adverse action, and that for an employee to be constructively discharged, the working conditions must be "objectively intolerable." *Id.* at 919. Thus, the *Deleon* Court reasoned, while a transfer need not rise to the level of a constructive discharge to constitute an adverse action, "some level of objective intolerability" is needed: "[a]t a minimum, the employee must be able to show a quantitative or qualitative change in the terms [or] the conditions of employment." *Id.*

Here, the district court ignored *Threat* and, instead, took *Deleon*'s somewhat confusing approach a step further. Rather than assessing whether there was a "quantitative or qualitative change in the terms [or] the conditions of employment," as *Deleon* directs, the court applied the

objective-intolerability standard for constructive discharge to Milczak's transfers and reassignment. *See* R.42, Op., PageID#759-760 (initially observing that a reassignment may be considered an adverse action "[i]f the circumstances give rise to some level of objective intolerability," but later holding that "the evidence does not support the conclusion that a reasonable person in plaintiff's position, would find the reassignments intolerable."). Further, like *Deleon*, it too mistakenly relied on precedent of the Supreme Court and this Court construing the adverse-action requirement in the retaliation context. *Id.* at PageID#758-759 (citing *White,* 364 F.3d 789, and *Burlington Northern,* 548 U.S. 53).

The district court's reliance on retaliation cases and its application of *Deleon* were both fatally flawed. Milczak claimed that he was transferred and reassigned because of his age, not in retaliation for complaining about age discrimination. Under the ADEA, like Title VII, retaliation and discrimination claims stem from separate statutory provisions with different language and, accordingly, different legal standards. *Compare* 29 U.S.C. § 623(d) *with* 29 U.S.C. § 623(a)(1); *see Burlington Northern*, 548 U.S. at 68 (explaining that Title VII's antiretaliation provision incorporates a court-created limiting principle of material adversity that is unnecessary in the

antidiscrimination context); *Chambers*, 35 F.4th at 877 (explaining difference). The *Burlington Northern* material-adversity analysis had no place here.

Nor did Milczak claim that he was constructively discharged—i.e., that the "circumstances of discrimination" were "so intolerable that a reasonable person would resign." *Green v. Brennan*, 578 U.S. 547, 560 (2016); *see also Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002) ("For a transfer or reassignment to amount to a constructive discharge, its conditions must be objectively intolerable to a reasonable person."). As *Threat* makes clear, Section 623(a)(1) does not require that an employee alleging discrimination in the "terms" or "conditions" of employment make a separate showing of objective intolerability.

Because *Deleon* predates *Threat* by several years, to the extent the two decisions conflict, this Court's prior-panel rule dictates that *Deleon* controls. *See, e.g.*, *United States v. Abboud*, 438 F.3d 554, 567 (6th Cir. 2006) (observing that the prior-panel rule governs when "two lines of cases directly conflict and cannot be reconciled"). That said, in *Threat*, 6 F.4th at 679-80, this Court cited *Deleon* in support of its statement that "[s]ome shift changes and reassignments may constitute … discrimination in 'terms,' 'privileges,' and

other aspects of employment." Moreover, *Threat* explained, the de minimis exception prevents turning "the anti-discrimination provision into a 'general civility code.'" *Id.* at 680. Thus, *Threat* suggests that *Deleon*'s "some level of objective intolerability" requirement is coextensive with the "de minimis" exception. Such a reading is consistent with both *Threat*'s explanation that "innovations" in caselaw may sometimes be explained by the de minimis exception, 6 F.4th at 679, and *Deleon*'s qualification that an employee need only show "a quantitative or qualitative change in the terms [or] the conditions of employment," 739 F.3d at 919.[7]

Next, the district court erred by omitting key facts about Milczak's changed job responsibilities from its adverse-action analysis. As to the first transfer, it noted the stress and harassment Milczak experienced, but neglected to consider that the change in his job duties required him to work with the trade employees, whom he found significantly more difficult than his previous coworkers. *See supra* p. 4. As to reassignment, the court

_____

[7] Should the court find the two opinions irreconcilable, however, *Threat* should govern. As explained above, *Threat*'s holding is consistent with both statutory text and Supreme Court precedent (*see supra* p. 12), whereas *Deleon* derives its atextual objective-intolerability requirement from the retaliation and constructive-discharge contexts.

considered only the stress and impact on Milczak's marriage, again neglecting the changed job responsibilities that, Milczak testified, rendered obsolete the skills he had developed throughout his career. *See supra* p. 7 (recounting that "there was nothing to do," feeling like an "outcast," and finding that all his production skills and expertise were wasted on a non-production shift). The court also failed to consider the impact of the shift change, which, Milczak related, increased his marital stress and deprived him of opportunities to earn overtime compensation. *See supra* p. 7.

Finally, the district court conflated the adversity and causation elements of an ADEA discrimination claim, which led it to inject irrelevant evidence into its analysis. Under Section 623(a)(1), a plaintiff must show not only that an employer's action affected his "compensation, terms, conditions, or privileges of employment" but also that the action was discriminatory and undertaken "*because of* [his] age." (emphasis added); *see Threat*, 6 F.4th at 677 (noting that the inquiries are separate and focusing only on the former—"there is little room for debate that the city discriminated against the plaintiffs … and treated the black captains differently 'because of' their 'race.' … The main debate in this case turns on

the meaning of 'compensation, terms, conditions, or privileges of employment.'").

In this case, when determining whether Milczak's transfers and reassignment were sufficiently adverse, the district court highlighted the purportedly age-neutral reasons for why they occurred. *See* R.42, Op., PageID#759 (noting that "the circumstances … when plaintiff was reassigned" involved plant-wide changes and "everybody … was worried about losing their job."). Such evidence is relevant to *why* the transfers and reassignment occurred, not whether they implicated the compensation, terms, or conditions of Milczak's employment. The district court should not have relied on it in determining whether the transfers and reassignment counted as adverse actions.

## II. Milczak generally alleged a hostile work environment in his administrative charge and thus satisfied the charge-filing requirement.

The ADEA requires that an individual file a charge of discrimination with the EEOC prior to filing a civil action. 29 U.S.C. § 626(d). To satisfy this requirement, the charge must "generally allege the discriminatory act(s)." 29 C.F.R. § 1626.6; *see also* 29 U.S.C. § 628 ("[T]he [EEOC] may issue such rules and regulations as it may consider necessary or appropriate for

carrying out this chapter …."); *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 395 (2008) (holding, in interpreting ADEA regulations promulgated by the EEOC, that "when an agency invokes its authority to issue regulations, which then interpret ambiguous statutory terms, the courts defer to its reasonable interpretations.").[8]

The charge requirement "is not meant to be overly rigid"—the charge "should be liberally construed …." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006). As the Supreme Court has explained in the Title VII context, "a charge of employment discrimination is not the equivalent of a complaint initiating a lawsuit." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68 (1984). Instead, the Court elaborated, the function of a charge "is to place the EEOC on notice that someone (either a party claiming to be aggrieved or a Commissioner) believes that an employer has violated the

_____

[8] We note that the district court was incorrect to characterize charge-filing as an "exhaustion of administrative remedies" requirement. *See* R.42, Op., PageID#762. Because the EEOC has no power to issue decisions adjudicating private-sector claims or awarding relief, charges simply give the agency the right of first refusal before individuals file their own de novo actions in court. *See generally* Br. for the U.S. as Amicus Curiae Supporting Respondent at 26-27, *Fort Bend Cnty. v. Davis*, No. 18-525, 2019 WL 1489048 (S. Ct. April 1, 2019) (explaining why the charge-filing requirement is not an "exhaustion" requirement).

title. The EEOC then undertakes an investigation into the complainant's allegations of discrimination." *Id.*

Milczak fulfilled the ADEA's charge-filing requirement for his hostile-work-environment claim. Milczak's dual-filed MDCR and EEOC charge discussed, at minimum, six instances of discrimination over the course of roughly seven months, all of which he states were related to his age, and all slotted under "Harassment." R.26-15, Charge of Discrimination, PageID#351. One of those acts may itself be construed as continuous—Milczak noted that his manager called him old and directed profanities at him "as recently" as June 2019, implying that his manager had a history of such conduct. *Id.* None of these situations were addressed by managers, according to Milczak, even though he reported them "multiple times." *Id.*

Milczak's charge "generally allege[s]," 29 C.F.R. § 1626.6, reasonably frequent discriminatory conduct.  Some of the alleged conduct could be understood as physically threatening (the picture depicting him dead in a trap); some could be construed as continuous (the profanities and "old" comments levied by his manager); and some could be construed as hampering his work performance (transfers, denial of overtime work, and

denial of an earned suggestion bonus). *See generally Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008) (detailing factors for consideration in a hostile-work-environment claim). This was more than enough detail to "generally allege" a hostile work environment based on age. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) ("A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'") (citation omitted); *Williams v. CSX Transp. Co.*, 643 F.3d 502, 509 (6th Cir. 2011) (holding that the charge form contained sufficient information to support a sex-based hostile-work-environment claim where employee made three explicitly sex- and/or race-based remarks to plaintiff).[9]

Moreover, Milczak's charge made clear that the overarching issue bridging the various discriminatory acts over seven months is

_____

[9] Because it is clear that Milczak, under the heading of "Harassment," generally alleged a hostile-work-environment claim, this Court need not apply the standard used to determine whether the charge allegations supporting a *different* claim would prompt the EEOC to investigate a hostile work environment. *See* R. 42, Op., PageID#762 ("whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate *a different, uncharged claim*, the plaintiff is not precluded from bringing suit on that claim.") (citing *Davis v. Sodexho, Cumberland Coll. Cafeteria,* 157 F.3d 460, 463 (6th Cir. 1998) (emphasis added)).

"harassment," a descriptor that courts routinely use to describe a hostile-work-environment claim. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993) ("Title VII comes into play before the harassing conduct leads to a nervous breakdown."); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 76 (1998) ("This case presents the question whether workplace harassment can violate Title VII's prohibition against 'discriminat[ion] … because of … sex,' … when the harasser and the harassed employee are of the same sex."). *See also Spence v. Donahoe*, 515 F. App'x 561, 571 (6th Cir. 2013) (rejecting defendant's argument that charge was insufficient because plaintiff failed to specifically mention a hostile-work-environment claim where EEOC charge "refers to 'harassment' and 'intimidation'"); *Waggoner v. Carlex Glass Am., LLC*, 682 F. App'x 412, 417 (6th Cir. 2017) (charge insufficiently alleged hostile-work-environment claim where it did not "describe any *harassment*" and stated only that plaintiff "has a disability, that he requested an accommodation, that he was asked about his medication, and that he was discharged") (emphasis added).

The district court applied the legal standard incorrectly and omitted key facts in holding that Milczak failed to allege a hostile work environment in his charge. For example, although Milczak explicitly stated

in his charge that the mousetrap picture "was made because of my age," the court ruled that it would not consider this allegation as part of his charge based on Milczak's later deposition testimony, "where he stated that he did not tell anyone that he thought the picture was related to his age." R.42, Op., PageID#763 n.2. Even if the court were correct that there was a conflict between the charge and what Milczak said later in his deposition, at most that might have ramifications at summary judgment. It has no bearing on whether Milczak "generally alleged" a hostile work environment *for the purposes of his charge*.

The court further erred by measuring the adequacy of Milczak's charge against the summary-judgment standard for a hostile-work-environment claim. As explained above, Milczak was required only to "generally allege the discriminatory act(s)." 29 C.F.R. § 1626.6. The district court nevertheless faulted Milczak because "[t]he charge does not allege that any of the acts interfered with plaintiff's work performance." R.42, Op., PageID#763. Although evidence of such interference might well be relevant to a plaintiff's claim in litigation, *see Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008), it is not a prerequisite for an EEOC charge—nor, for that matter, for a hostile-work-environment claim in court. *See generally Davis v.*

*Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998)

(observing that charging parties need not "include the exact wording

which might be required in a judicial pleading.") (citation and quotation

marks omitted); *Harris*, 510 U.S. at 23 ("But while psychological harm, like

any other relevant factor, may be taken into account, *no single factor is*

*required*." (emphasis added)). In addition, liberally construed, the charge

*did* contain such allegations of transfers, denial of overtime work, and

denial of an earned suggestion bonus, each of which could have hampered

Milczak's work performance.

Along the same lines, the court also refused to consider Milczak's

charge allegations regarding "job reassignments, being charged with an

attendance violation, and being denied a suggestion bonus," reasoning that

they were not "overtly based on age." R.42, Op., PageID#763. But this

Court has stated clearly that actions that are not themselves expressly

discriminatory may nonetheless comprise part of a hostile work

environment, especially when combined with other, more explicit acts. *See*

*Jackson v. Quanex Corp.*, 191 F.3d 647, 661 (6th Cir. 1999) ("Title VII has long

afforded employees the right to work in an environment free from

'discriminatory intimidation, ridicule and insult,' without limiting this

concept to intimidation or ridicule explicitly racial in nature.") (quoting *Meritor*, 477 U.S. at 65); *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 886 (6th Cir. 2008) (observing that the presence of explicitly bigoted statements can "'shed[] light' on what could otherwise be seen as the ambiguous motivations behind some of the other examples of harassment"). And, in any event, Milczak stated in the charge that "this conduct and the transfers *were based on my age*" and that when he was transferred, his "previous position was *filled by a younger employee*." R.26-15, Charge of Discrimination, PageID#351 (emphases added).

Finally, the court omitted other facts altogether from its analysis, without providing a reason: that, due to his age, Milczak "los[t] the opportunity for overtime," that Milczak's manager "directed profanities" at him, and that managers ignored his multiple complaints. *Id.* The court's multiple omissions are fundamentally incompatible with this Court's direction that the charge be "liberally construed." *Randolph*, 453 F.3d at 732.

All told, the district court incorrectly winnowed the series of six-plus events Milczak alleged in his charge to just one—that his manager once

called him old[10]—and concluded that this "[o]ne discrete discriminatory act is insufficient to establish a hostile work environment claim for purposes of exhaustion." R.42, Op., PageID#763. In reaching its conclusion, the court relied on *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010), in which this Court held that where the plaintiff "did not allege a claim of hostile work environment" in his charge, the acts undergirding the plaintiff's disparate-treatment discrimination claim did not separately "support a subsequent, uncharged claim of hostile work environment." Unlike in *Younis*, however, Milczak *did* generally allege a hostile work environment—he alleged six-plus discriminatory acts within a seven-month period all listed under the banner of "harassment" motivated by his age. *Compare Younis v. Pinnacle Airlines, Inc.*, No. 2:07-cv-02356, 2008 WL 11411604, at *4 (W.D. Tenn. Aug. 14, 2008), *with* R.26-15, Charge of Discrimination, PageID#351.[11] The allegations in Milczak's charge were more than enough to satisfy the ADEA's charge-filing requirement.

---

[10] Even this conclusion conflicts with the administrative charge. As explained *supra* at p.24, Milczak states in his charge that his manager called him old "as recently as June 2019," implying that the manager had a history of such conduct.

[11] The *entire* EEOC charge at issue in *Younis*, 2008 WL 11411604, at *4, reads as follows:

## CONCLUSION

For the foregoing reasons, the judgment of the district court should

be vacated and the case remanded for further proceedings.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ELIZABETH E. THERAN
Assistant General Counsel

s/*Tara Patel*
TARA PATEL
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2770
Tara.Patel@EEOC.gov

August 30, 2023

---

I was subjected to two proficiency checks, around the last week of August
2005; and, I was advised that I had failed both checks. Ultimately, I was
discharged for an alleged inability to pass Proficiency Checks.
I believe that I have been discriminated against because of my religion
(Muslim) and National Origin (Arab) in violation of Title VII of the
Civil Rights Act of 1964, as amended.

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 6196 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(b)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 14 point.

<div style="margin-left:40%;">

s/*Tara Patel*
TARA PATEL
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2770
Tara.Patel@EEOC.gov

</div>

August 30, 2023

**CERTIFICATE OF SERVICE**

I certify that on August 30, 2023, I electronically filed the foregoing brief in PDF format with the Clerk of Court via the appellate CM/ECF system. I certify that all counsel of record are registered CM/ECF users, and service will be accomplished via the appellate CM/ECF system.

s/*Tara Patel*
TARA PATEL
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2770
Tara.Patel@EEOC.gov

# Addendum

Designation of Relevant District Court Documents

| Record Entry # | Document Description | Page ID # Range |
|---|---|---|
| R.26-2 | Def's Excerpt of Douglas Milczak Deposition | 128-203 |
| R.26-3 | Mike Lazaroff Deposition | 204-212 |
| R.26-5 | Mousetrap Picture | 225-226 |
| R.26-8 | Sean Tackett Declaration | 249-312 |
| R.26-9 | HR Mousetrap Investigation Report | 313-328 |
| R.26-10 | Damon Ferraiuolo Declaration | 329-333 |
| R.26-11 | Shift Change Emails | 334-335 |
| R.26-15 | MDCR & EEOC Charge of Discrimination | 350-351 |
| R.40-2 | Pl's Excerpt of Milczak Deposition Part I | 565-603 |
| R.40-3 | Pl's Excerpt of Milczak Deposition Part II | 604-652 |
| R.40-8 | HR Mousetrap Investigation Email | 724-725 |
| R.42 | Opinion & Order Granting Defendant's Motion for Summary Judgment | 750-768 |