CASE NO.: 23-1462

# UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

DOUGLAS MILCZAK v. GENERARL MOTORS LLC

On Appeal from the U.S. District Court for the Eastern District of Michigan Southern Division's April 27, 2023 Judgment in Case No.: 21-cv-11484

# REPLY BRIEF OF PLAINTIFF-APPELLANT DOUGLAS MILCZAK

Eric I. Frankie (P47232)
Attorney for Plaintiff-Appellant
3000 Town Center, Suite 1820
Southfield, MI 48975
(248) 219-9205
ericfrankie26@yahoo.com

# I. **TABLE OF CONTENTS**

**I.  TABLE OF CONTENTS**……………………………………………..p. 2

**II. TABLE OF AUTHORITIES**……………………………………………p. 3

**III. ARGUMENT**……………………………………………………..………p. 4

**IV. CONCLUSION**……………………………………………………………p.17

**V. CERTIFICATE OF COMPLIANCE**……………………………………p.17

**VI. CERTIFICATE OF SERVICE**…………………………………………..p.18

# II. TABLE OF AUTHORITIES

**FEDERAL RULES OF EVIDENCE:**

F.R.E. 602……………………………….…………………………p. 4

**SIXTH CIRCUIT CASES:**

*Crawford v. Medina General Hospital, 96 F.3d 830  (6th Cir. 1996)*……p. 4, 5, 6, 7, 8, 9, 10, 11

*Freed v. Thomas, 976 F.3d 729 (2020)*........................................................p. 14

*Grider v Drugs, LLC, v. Express Scripts, Inc., 500 Fed.Appx. 402 (2012)*..p. 10

*Threat v. City of Cleveland, 6 F.4th 672 (6th Cir. 2021)*……………….p. 13

*Thornton v. Fed. Express Corp., 530 F.3d 451 (6th Cir. 2008)*………….p. 5, 9, 10, 11

*White v. Burlington Northern & Santa Fe. R. Co., 364 F.3d 789 (6th Cir. 2004)*……………………………………………………………..p. 12, 13, 15

# III. ARGUMENT

**A. Defendant acknowledges that this Court can consider Plaintiff's Summary and Declaration.**

Defendant acknowledges that this Court can consider Plaintiff's Summary and Declaration. Defendant states in its Brief: "Plaintiff's declaration and Summary should be excluded from this Court's consideration on appeal **to the extent** they contain assertions that either contradict his deposition testimony, are not made on personal knowledge, and fail to set out *facts* that would be admissible at trial." (Document: 26, p. 38) Here, Plaintiff's Declaration and Summary do not contradict his deposition testimony but simply explain some of it. Further, F.R.E. 602 provides that personal knowledge can be established by showing that the witness was in physical position to see, hear or otherwise perceive the matters to which the testimony relates. All of Plaintiff's Summary and Declaration statements satisfy this definition of personal knowledge and will, therefore, be admissible at trial.

**B. The cases relied on by Defendant support Plaintiff's argument that he has presented sufficient material issues of fact in support of his ADEA hostile work environment claim.**

The cases relied on by Defendant in its Brief on Appeal support Plaintiff's argument that he has presented sufficient material issues of fact in support of his ADEA hostile work environment claim. Defendant cites to this Court's decisions in ***Crawford v. Medina General Hospital, 96 F.3d 830 (6th Cir. 1996)*** and

4

***Thornton v. Fed. Express Corp., 530 F.3d 451 (6th Cir. 2008)*** for the proposition that "in assessing the severity or pervasiveness of the alleged harassment, Courts consider the totality of the circumstances." (Document: 26, p. 43)   A review of each of these decisions indicates that the lower court's disaggregation of Plaintiff's evidence concerning his age hostile work environment and the consideration of that evidence in isolation, which Defendant mimics in its Brief on Appeal with one important exception, was incorrect.

In ***Crawford,*** this Court stated that while a plaintiff must subjectively feel that an environment is hostile and the environment must in fact be objectively hostile, it is not necessary that the plaintiff "be committed to a psychiatric institution" in order to have a legal complaint. (***Id., at 835***)  Further, the ***Crawford*** Court held whether harassment is sufficiently severe or pervasive to create an abusive work environment is 'quintessentially a question of fact.' (***Id., at 835-836***) Most importantly, the Court engaged in a 'totality of the circumstances' analysis of the plaintiff's age hostile work environment claim which included the consideration of events that were not 'discernibly age-based.' (***Id., at 836***) Specifically, the Court reviewed (1) two age-neutral comments (one of which the plaintiff did not hear directly and the other of which was not directed to her) as well as others, (2) the plaintiff's perception that the office was divided into two sides based on age, (3) the plaintiff's exclusion from social events at work

including a pizza party, and (4) plaintiff's treatment of others with hostility including references to her co-workers as "Sluggo," "Freak," "Miss Piggy," and "Fatso." The *Crawford* Court considered all of the events of hostility, whether specifically age related or not, to perform the proper 'totality of the circumstances' analysis. As a result of this analysis, the Court concluded that the plaintiff's work environment was not particularly severe or degrading and that her complaints were of 'mere offensive utterance[s]', as opposed to physically threatening or humiliating conduct." (*Id., at 836*) The *Crawford* Court emphasized that "pizza parties are simply not a term, condition or privilege of employment of which Congress has taken cognizance." (*Id.*)

Here, Plaintiff has presented significantly more evidence in support of his age-hostile work environment claim than *Crawford*, including physically threatening or humiliating conduct. Lazaroff, Plaintiff's immediate supervisor, subjected Plaintiff to specifically age hostile remarks in the context of significant issues related to the terms and conditions of Plaintiff's employment, including: (1) his "old fart" comment soon after GM's DHAM shutdown announcement (12/18), (2) his "they might not want an old fucker like you" remark before Plaintiff's visit to Defendant's Toledo plant for a possible position (1/19), and (3) his "just drop it you old motherfucker, you'll never get paid for this" statement when Plaintiff sought to discuss a cost-savings suggestion. Unlike *Crawford*, Plaintiff was

6

subjected to physically threatening or humiliating conduct, in addition to Lazaroff's comments, including the "mousetrap" drawing and the picture of an old man with long hair and his eyes poked out both of which were related to his age. The lower court acknowledged that the "mousetrap" drawing was clearly directed toward Plaintiff, was evidence of harassment and was perceived by Plaintiff to be related to his age. Likewise, Defendant admits that the "mousetrap" picture was "highly unprofessional and highly inappropriate" and was perceived by Plaintiff as based on his age.

    Neither the lower court nor Defendant dispute that the "mousetrap" picture, which the lower court described as displaying a dead mouse with Plaintiff's name on it in a trap being sexually assaulted by other mice (RE 42, ID#752), was physically threatening or humiliating conduct. Also, the lower court, unlike Defendant, acknowledged that the picture of the old man with long hair and his eyes poked out (which Plaintiff complained about to Mitchell) "could have been directed at plaintiff and could have been a statement about his age" and neither the lower court nor Defendant dispute that this picture was physically threatening or humiliating to Plaintiff. These physically threatening or humiliating age-hostile pictures along with all of the other age hostile events identified by Plaintiff in his Brief , present a much stronger case than in ***Crawford, supra.,*** of an age hostile work environment.

7

Additionally, unlike *Crawford,* Plaintiff suffered negative consequences to his terms and conditions of employment as a result of the age-hostile work environment he was subjected to by Defendant. On August 8, 2019, Defendant gave Plaintiff a memo about his attendance which contained threatening statements that Plaintiff may be terminated and/or have an impact to his compensation because Plaintiff had been missing work due to unpredictable stress headaches caused by GM's age hostility. On February 16, 2021 Cuthbert gave Plaintiff the first bad performance review he had received in 25 years at GM based on false information that Plaintiff rebutted. On September 29, 2021, Mitchell told Plaintiff that he needed to do more on the DHAM project and that people were saying that they did not see him on site which was not true. In December, 2021, Cuthbert falsely accused Plaintiff of not doing his job and started having Plaintiff provide updates or daily tracking of his job duties even though he had never heard of any GM Engineer/Salary employee having to do a daily report. On January 19, 2022, Plaintiff had to go on a 10 week leave of absence for severe depression and anxiety. Thus, in contrast to *Crawford, supra.,* the age hostile work environment Plaintiff was subjected to by Defendant was severe, degrading and involved physically threatening or humiliating conduct as opposed to just 'mere offensive utterances.' There is no indication that Plaintiff engaged in any hostile conduct

towards his coworkers or supervisors like *Crawford* which this Court found to weigh against her age hostile work environment.

Significant to the case *sub judice* is the *Crawford* Court's consideration of all of the conduct she was subjected to whether it was directly aged based or not. Applying this correct 'totality of the circumstances' test here, Defendant cannot plausibly argue that the treatment Plaintiff suffered was akin to *Crawford***'s** exclusion from pizza parties and the other hostility in her place of employment which this Court considered 'not insubstantial.' (***Id., at 836)*** Rather, the instant case compares favorably to the work environment presented in ***Thornton v Federal Express Corp., 530 F.3d 451 (2008).*** Based on ***Thornton***, this Court should reverse the lower court's decision to grant Defendant's Motion as to Plaintiff's age-hostile work environment claim.

In ***Thornton,*** this Court found that the district court's analysis of the plaintiff's Title VII sexually hostile work environment claim was 'incomplete.' (***Id., at 455)*** The Court held that to determine whether the harassment unreasonably interfered with the plaintiff's work performance by creating a hostile work environment, the 'totality of the circumstances' must be considered. (***Id.***) This Court stated:

> **"The district court minimized the offensive nature of Bragorgos' comments and behavior. Viewing the record in the light most favorable to plaintiff, we are satisfied that it establishes a genuine fact issue on the fourth element of her *prima facie* case. Although there is little evidence**

**that Bragorgas was physically intimidating, his continuous preoccupation with sex talk and persistent unwelcome advances often targeted at plaintiff were degrading, offensive, increasingly intimidating and inexcusable. A reasonable person directly subordinate to Bragorgas would find the work environment hostile."** (*Id., at 456; emphasis supplied*)

This Court emphasized the fact that during a two month period, the supervisor put increasing pressure on the plaintiff "to consummate their relationship" which coincided with tensions at work resultant from employee route adjustments being made that the supervisor seemed to exploit rather than alleviate. (*Id.*) The Court found that judging the supervisor's alleged conduct objectively and subjectively the facts adduced created a genuine question as to whether the work environment was hostile even though it was undisputed that ***Thornton*** did not report the harassment until two months after she was off of work on a leave of absence.[1] Defendant's reliance on the ***Crawford*** and ***Thornton*** decisions is fatal to

---

[1] The ***Thornton*** Court affirmed the District Court's grant of summary judgment for the defendant on the separate ground that there was no question of fact as to its affirmative defense that there was no basis for employer liability under the plaintiff's hostile work environment claim. Defendant did not raise this issue below, as well as on appeal, and has therefore waived any argument concerning this affirmative defense. (Defendant's Brief in Support of Motion for Summary Judgment, RE 26, ID#121-125) This Court has held that appellate courts are not to address issues not raised for the first time in the trial court. ***Grider Drugs, LLC, v Express Scripts, Inc., 500 Fed.Appx. 402 (2012)***. In any event, in ***Thornton*** the plaintiff unreasonably failed to take advantage of the defendant's preventive and corrective measures including the opportunity to return to work under a different supervisor, as well as accommodation of her scheduling preferences. Here, Plaintiff was not offered any such preventive or corrective measures by GM. Plaintiff's use of Defendant's harassment policy concerning the "mousetrap"

their arguments concerning Plaintiff's age hostile work environment claim for five (5) main reasons.

First, under the ***Crawford*** and ***Thornton*** decisions, it is readily apparent that this Court can consider all of the 19 incidents of age hostile conduct identified by Plaintiff in support of his ADEA hostile work environment claim in combination as part of its 'totality of the circumstances' analysis (Document: 20, pp. 28-3). Second, the lower court's reductionist disaggregation of all of the 19 events Plaintiff cites in support of his hostile work environment claim, which Defendant mimics on appeal, is legally impermissible under ***Crawford*** and ***Thornton***, which affirm application of the 'totality of the circumstances' test. Third, Plaintiff's evidence of his age hostile work environment compares favorably with the fact scenario in ***Thornton***, which this Court held presented material questions of fact to be submitted to the jury. Fourth, this Court's holdings in ***Crawford*** and ***Thornton*** make it clear that it is not legally significant to Plaintiff's age hostile work environment 'totality of the circumstances' analysis that he did (or did not) complain about each of the 19 incidents to Defendant or that he complained that each of them was based on his age. Lastly, under ***Crawford*** and ***Thornton***, Plaintiff does not have to be psychiatrically hospitalized to maintain his ADEA

---

drawing resulted in criticism, further retaliation and harassment but not any corrective measures which was an important fact in the ***Thornton*** Court's holding.

hostile work environment claim and Plaintiff's ability to continue to work, notwithstanding the harassment he has received, is to **his** credit, not Defendant's.

**C. The case relied on by Defendant supports Plaintiff's argument that his job transfers were adverse employment actions and Plaintiff has demonstrated pretext.**

The case relied on by Defendant, ***White v. Burlington Northern & Santa Fe R. Co., 364 F.3d 789 (2004),*** (Document: 26, p. 51, FN 20) supports Plaintiff's argument that his job transfers were adverse employment actions and Plaintiff has demonstrated pretext. In ***White v. Burlington Northern & Santa Fe R. Co.,*** this Court held that Plaintiff suffered an adverse employment action by her transfer from a forklift operator job to a standard track laborer job. The Court noted that while the track laborer position paid the same as the forklift operator position, the plaintiff's new job was "dirtier." (***Id., at 803***) Furthermore, the forklift position required more qualifications which was an indication of prestige. (***Id.***) Lastly, the Court held that the plaintiff's forklift operator position was objectively considered a better job and her reassignment, even without loss of pay, was, essentially, to "some wretched backwater." (***Id., at 803-804***) Here, like ***White***, in January, 2019, Plaintiff was essentially transferred into "some wretched backwater" which was a horrible position and for which he was not adequately trained and supported. Plaintiff was also not given the disciplinary tools required for skilled trades. In GA Maintenance, Plaintiff was immediately subjected to severe harassment, including

by the threatening "mousetrap picture." Further, this assignment was objectively horrible because Plaintiff's supervisors assured him that "trades are a bitch to work with." In July, 2019, Plaintiff was transferred to some other "wretched backwater" when he was moved to the body shop, as well as in August, 2019, when he was put on the 2nd shift. This transfer made Plaintiff feel like an isolated outcast, did not utilize his skills and knowledge and denied him the opportunity for overtime. Thus, like the plaintiff in *White, supra.,* the case cited and relied on by GM, Plaintiff suffered an actionable adverse employment action by the job transfers. Moreover, Plaintiff and the EEOC's reliance on *Threat v. City of Cleveland, 6 F.4th 672 (6th Cir. 2008)* is wholly proper. The *Threat* Court acknowledged that there was "little room for debate" that the defendant had engaged in evidently direct race discrimination as noted by GM. However, the Court explained that the "main debate" in the case was whether shift schedules and shift priorities constituted materially adverse employment actions under Title VII. The Court held that employer required shift changes, such as occurred in this case, are actionable, materially adverse employment actions.

Plaintiff has also demonstrated pretext for Defendant's claimed legitimate reasons for all of the adverse employment actions taken against him.[2] Staffing

---

[2] Defendant argues that Plaintiff has abandoned his arguments concerning pretext. However, the lower court never addressed and passed on the issue of pretext with respect to Plaintiff's ADEA discrimination and retaliation claims. Since the lower

13

needs did not actually motivate GM's decision to reassign Plaintiff in 2019. In December, 2018, after the DHAM shutdown announcement, GM found younger employees positions but did not do so for Plaintiff despite assurances that it would do so. Plaintiff was also assigned to GA Maintenance in January, 2019, without proper training and support. On March, 8, 2019, Lazaroff, who had already expressed direct hostility to Plaintiff's age, threatened that he could remove Plaintiff from the plant anytime he wanted. Then, in July, 2019, Lazaroff filled Plaintiff's GA Maintenance position with a younger, less experienced engineer after telling Plaintiff he could handle the responsibility alone. Plaintiff was reassigned to the Body Shop where his skills and experience were basically useless after GM rejected the suggestion that an available younger, less experienced engineer get the assignment. In fact, on August 7, 2019, Ferraiuolo acknowledged that GM's policy was to promote and hire younger employees while pushing older ones out when he notified Plaintiff of the transfer to 2nd shift. Plaintiff, without assistance, found his current position at central office in February, 2020. In February, 2020, Mitchell told Plaintiff, after he mentioned that he hadn't been doing well because of the harassment, "They're getting rid of older guys, and I ran

---

court did not address pretext, Plaintiff did not address pretext in his initial Brief. This Court typically does not decide issues on appeal that were not addressed and passed on by the lower court. **Freed v. Thomas, 976 F.3d 729 (2020)**. To the extent this Court will review the issue of pretext with respect to Plaintiff's ADEA discrimination and retaliation claims, he has demonstrated it for the reasons set forth herein.

across some of that in my last Arlington job." Thus, like the defendant's reasons in *White, supra.,* GM's asserted reasons for Plaintiff's job transfers were contradictory, as well as false, and were merely pretext for discrimination.

Likewise, GM's stated reasons for not giving Plaintiff proper raise percentages and bonuses were not the actual reasons for failing to do so. Rousell told Plaintiff that in March/April 2018 that he was making too much money and agreed with Plaintiff that "knowledge did not matter" thereby indicating age as the real reason GM did not properly compensate Plaintiff. Similarly, GM's stated reason for not adequately paying Plaintiff for his suggestions (i.e., not meeting the Suggestion Plan requirements) is pretext for age discrimination because Lazaroff told Plaintiff in June, 2019, to "just drop it, you old motherfucker. You'll never get paid for this" while Plaintiff was trying to explain his suggestion to stop the skillet conveyor carts from tipping over.

**D. Plaintiff has presented sufficient evidence that Defendant's stated reason for the August 8, 2019 attendance memo was pretext for retaliation.**

Plaintiff has presented sufficient evidence that Defendant's stated reason for the August 8, 2019 attendance memo was pretext for retaliation. On August 8, 2019, shortly after Plaintiff's transfer to the Body Shop, GM managers gave Plaintiff an unwarranted attendance memo which threatened Plaintiff with termination and/or negative consequences because Plaintiff was taking time off due to unpredictable stress headaches caused by GM's age hostility, which

15

Plaintiff's supervisors were aware of. The memo was also given shortly after Plaintiff complained on July 16, 2019 to Donlin about Lazaroff's age hostile comments and threat to remove him. Defendant's claimed reason for issuing the attendance memo is "Plaintiff was indisputably not meeting GM's expectations that employees come to work on time and to provide advance notice of their absences so that alternate work arrangements could be made." (Document: 26, p. 64) However, this reason is pretext because Defendant had assured Plaintiff he could take time off for the stress caused by the "mousetrap picture" and GM, admittedly, has no written policy for salaried attendance. As a result, Plaintiff's absences were not the real reason for the attendance memo.

Donlin noted Plaintiff became "stressed out a lot" because of the "nasty" mousetrap picture and testified that "we were giving him some time to kind of clear his mind on that stuff." Donlin claimed that they worked it out that Plaintiff could take some time off if needed. Donlin testified that "without that picture, I think he would be great." Yet, GM reneged on this assurance of leave time in the context of Plaintiff's complaints about age-related mistreatment. Donlin explained that Plaintiff had to be "course corrected" because he needed time off due to the stress caused by the "mousetrap picture." Also, during the meeting where Plaintiff was given the memo, Donlin mentioned that he did not investigate the Lazaroff issues any further. Moreover, while Tackett stated he would consider looking into

16

the issue, it is undisputed he never provided Plaintiff any further feedback. This evidence strongly suggests that Plaintiff's complaints about age hostile conduct, and not the absences themselves, were the real motivation for the attendance memo. Plaintiff's argument on this point is strengthened by the fact that Defendant admits the August 8, 2019 attendance memo was not even within its attendance policy for salaried employees' because there is no such written policy.

## IV. <u>CONCLUSION</u>

WHEREFORE, Plaintiff respectfully requests that this Court reverse the lower court's April 27, 2023 Opinion and Order Granting Defendant's Motion for Summary Judgment and accord him any other relief deemed just and necessary.

                Respectfully submitted,

Date: November 13, 2023          By:___*/s/Eric I. Frankie*_____
                Eric I. Frankie (P47232)
                Attorney for Plaintiff
                3000 Town Center, Ste. 1820
                Southfield, MI 48075
                (248) 219-9205
                ericfrankie26@yahoo.com

## V.   <u>CERTIFICATE OF COMPLIANCE</u>

I, Eric I. Frankie, certify on November 13, 2023 that this document complies with the word limit of FRAP 32(a)(7) because excluding the parts of the document exempted by FRAP 32(f) this document contains approximately 3,656 words.

                _____*/s/Eric I. Frankie*_____

## VI. **<u>CERTIFICATE OF SERVICE</u>**

I, Eric I. Frankie, certify that on November 13, 2023, the foregoing instrument and this Certificate of Service were served on all counsel of record by electronic filing with the Court's ECF electronic filing system.

_____<u>/s/Eric I. Frankie</u>_____